Lonnie KING, Plaintiff–Appellant,

v.

**SUPER SERVICE, INC.,**
**Defendant–Appellee.**

No. 01–6143.

United States Court of Appeals,
Sixth Circuit.

June 26, 2003.

Before RYAN, BATCHELDER and LAY,* Circuit Judges.

BATCHELDER, Circuit Judge.

Plaintiff–Appellant Lonnie King appeals the district court's order granting summary judgment to his former employer, Defendant–Appellee Super Service, Inc., on King's claims that Super Service discriminated against him on the basis of sex in violation of Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e *et seq.* Specifically, King claims that he suffered sexual harassment at the hands of several of his male coworkers, which eventually forced him to resign. We find that the conduct of which King complains was not discrimination on the basis of sex, and is not prohibited under Title VII. We therefore affirm the judgment of the district court.

## I

Lonnie King began work as a dispatcher for Super Service, Inc., a trucking company, in January 1991 at the Super Service headquarters in Somerset, Kentucky. The job was stressful, and many of the dispatchers at Super Service regularly engaged in "horseplay" around the office to relieve stress. This horseplay commonly entailed name-calling and some "rough-housing," as well as more elaborate–and tasteless–practical jokes.[1] Everyone at the office, including King, generally seemed to enjoy these practical jokes and friendly banter.

However, the banter was not always good-natured. Two of King's coworkers. Tony Ricks and Paul Cundiff, were mean-spirited bullies who regularly tormented King over email and the phone, as well as in person. Some of their comments were simply puerile and cruel, while others possessed the added element of being either implicitly or explicitly sexual: Ricks and Cundiff used derogatory terms for "homosexual" to describe King and frequently expressed to King their professed belief that he wanted to perform oral sex on them.[2] King also suffered some physical abuse from his taunters, although it is not clear from the record how severe it was or

---

* The Honorable Donald P. Lay, United States Court of Appeals for the Eighth Circuit, sitting by designation.

1. For instance, some co-workers tied a dead possum to the front of King's car, and he did not know about it until the window attendant at a MacDonald's drive-through alerted him to the animal's presence on his bumper. Another time, some co-workers sent to King, via UPS, a dead racoon that they had peeled off the road. King was not, however, content to be the recipient of all the jokes; he could also dish it out. He once told his co-workers that he had put Ex–Lax into another co-worker's food, and occasionally would place tape on

the receivers of his co-workers' phones so that they could not hear the voice at the other end of the line.

2. Unlike King's appellate counsel who, for the edification of the court, spent a significant portion of his time at oral argument reciting verbatim the crass comments made by Ricks and Cundiff which had already been documented thoroughly in the briefs and the record, we see no need to traverse the litany of vulgar language and boorish insults that forms the basis of King's sexual harassment complaint.

how much the grabbing, punching, and kicking was simply part of the "horseplay" in which King engaged and which he may have encouraged.[3]

King regularly complained to Jonathan Kidd, a senior manager at Super Service, about the insults he suffered, although the management did little more to curb the problem than tell people to leave King alone. Kidd also issued two memos, one in 1994 and one in 1997, requesting that the dispatchers cut back on the amount and severity of their "horseplay." Nothing in the record indicates that Kidd ever followed through with any of the disciplinary action threatened in the memos. In fact, Kidd sometimes laughed along with Cundiff and Ricks as they needled King.

In February 1998, King requested a transfer to the Knoxville, Tennessee, terminal to work as a recruiter, giving as his reason for the request his desire to be closer to family. Even with this change in venue, the two bullies, some 130 miles away in Somerset, continued to send King nasty emails and hound him over the phone. King's complaints to his supervisor in Knoxville, to whom he showed several of these emails, were largely ignored.

Because his performance was unsatisfactory, King was fired from his position as a recruiter in April of 1999, but he was given the opportunity to continue with Super Service as a dispatcher in Knoxville. Less than a month later, King resigned from his employment with the company.[4] He then filed a charge of discrimination with the EEOC.[5] which did not pursue the case because, as it explained in a letter, King's harassment was based on sexual preference and "sexual preference is not a basis under Title VII." Upon petition for reconsideration, the EEOC laid out more fully the facts supporting its decision not to sue Super Service, including the fact that some of the harassing email messages purportedly sent to King by Cundiff or Ricks contained King's sign-on code (implying that King may have fabricated the documents).

In April 2000, King filed a complaint in the Eastern District of Tennessee alleging sexual harassment and unlawful termination in violation of Title VII[6] and the

3. The record contains two sets of affidavits from Super Service employees who had worked with King. The affidavits offered by King confirm that he was mistreated by Cundiff and Ricks on a regular basis, and that most of the complaints he made to management went largely unheeded. J.A. 420–50. Those affidavits offered by Super Service support the idea that while there was horseplay taking place at the office, King was a full participant and often an instigator in that behavior. J.A. 70–84.

4. King did not proffer his reasons for leaving Super Service in his resignation letter. He testified in deposition that he resigned due to the long-distance verbal abuse he continued to receive from Cundiff and Ricks, although he admits that he suffered no more harassment in Knoxville as a dispatcher than when he worked there as a recruiter for approximately one year.

5. Although King did not provide us with a copy of the EEOC charge, we glean from the copies in the Joint Appendix of the EEOC's correspondence with King's attorney that the charge included claims of sexual harassment resulting in constructive discharge.

6. 42 U.S.C. § 2000e–2(a) provides that
It shall be an unlawful employment practice for an employer–
(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

Tennessee Human Rights Act.[7] Super Service moved for summary judgment, and the district court, after reviewing the Supreme Court's opinion in *Oncale v. Sundowner Offshore Services, Inc.,* 523 U.S. 75, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998), as well as Sixth Circuit precedent, granted the motion. The district court held that "plaintiff has not met the requirements of same-sex sexual harassment because there is no allegation of discrimination because of male gender," and concluded that "[n]othing in Title VII protects a person because of sexual orientation or perceived sexual orientation. 'Congress intended the term "sex" to mean "biological male or biological female," and not one's sexuality or sexual orientation.'" (quoting *Spearman v. Ford Motor Co.,* 231 F.3d 1080. 1084 (7th Cir.2000)). The court did not specifically address King's Tennessee state law claim.

King timely appeals, arguing that the district court erred in concluding that there was no evidence that the harassment of which King complains was due to his gender. King's brief addresses only the Title VII claims, making no mention of his state law claims.[8] We must decide whether King has presented evidence showing that he suffered discrimination because of his sex in violation of Title VII.

## II

We review de novo the district court's grant of summary judgment, employing the same Rule 56(c) standard used by the district court. We examine the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits" in order to determine if there is a "genuine issue as to any material fact"

and whether the moving party "is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c); *Williams v. General Motors Corp.,* 187 F.3d 553, 560 (6th Cir. 1999). We view the evidence and any inferences that may be drawn therefrom in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

King argues that the behavior of his coworkers constituted discrimination on the basis of sex in violation of Title VII. While the meaning of "based on sex" for purposes of Title VII is not obvious on the face of the statute, the courts have given some shape to this indeterminate phrase. Prior to the Supreme Court's decision in *Oncale v. Sundowner Offshore Services, Inc.,* 523 U.S. 75, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998), this circuit held that an employee raising a Title VII claim for hostile environment as a result of sexual harassment must show that the harassment was "based on sex." The employee could make that showing, we said, by demonstrating that he had been harassed by a homosexual coworker who was sexually attracted to him. *Yeary v. Goodwill Indus.-Knoxville, Inc.,* 107 F.3d 443, 447–48 (6th Cir.1997).

The next year, in *Oncale,* the Supreme Court addressed the question of whether a male employee who was repeatedly teased and humiliated in front of his coworkers due to his perceived homosexuality, threatened with rape, and even physically assaulted in a sexual manner by male coworkers could present a claim of harass-

---

**7.** Tenn.Code Ann. § 4–21–101 *et seq* The language of section 4–21–401(a) essentially mirrors that of 42 U.S.C. § 2000e–2(a).

**8.** A failure to brief an issue before us constitutes an abandonment of the issue. *Enertech*

*Elec., Inc. v. Mahoning County Comm'rs,* 85 F.3d 257, 259 (6th Cir.1996) (arguments neither articulated nor pursued in the appellate brief are considered abandoned).

ment under Title VII. 523 U.S. at 77, 118 S.Ct. 998. The Court unanimously found "that nothing in Title VII necessarily bars a claim of discrimination 'because of ... sex' merely because the plaintiff and the defendant (or the person charged with acting on behalf of the defendant) are of the same sex." *Id.* at 79, 118 S.Ct. 998. It emphasized that harassment does not arise simply "because the words used have sexual content or connotations. 'The critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed.'" *Id.* at 80, 118 S.Ct. 998 (quoting *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 25, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (Ginsburg, J., concurring)); *see also EEOC v. Harbert–Yeargin, Inc.,* 266 F.3d 498, 521 (6th Cir.2001) (noting that not "all harassment of a sexual nature amounts, *ipso facto,* to gender discrimination"). A court's inquiry into this matter must take account of the social context in which the conduct occurred. 523 U.S. at 81–82, 118 S.Ct. 998; *see also Harris,* 510 U.S. at 21–22, 114 S.Ct. 367.

Of particular importance to the case before us today, the *Oncale* Court explained that an employee might be able to prove that he was "exposed to disadvantageous terms or conditions of employment to which members of the other sex [were] not exposed" if, for instance. (1) in the case of same-sex harassment, the harasser making sexual proposals to the plaintiff is homosexual; (2) "a female victim is harassed in such sex-specific and derogatory terms by another woman as to make it clear that the harasser is motivated by general hostility to the presence of women in the workplace;" or (3) the plaintiff could "offer direct comparative evidence about how the alleged harasser treated members of both sexes in a mixed-sex workplace." 523 U.S. at 80–81, 118 S.Ct. 998. King. however, has made no such showing.

Notwithstanding King's arguments to the contrary, we have found no evidence in the record that either Cundiff or Ricks was motivated by a sexual desire for King. Rather, the record reflects that King knew that Cundiff, his principal tormenter, was or had been romantically involved with women, and King testified that Cundiff would often grace those in his company with his opinions regarding the sexual desirability of various women who worked at Super Service. The record contains no evidence that any of King's male coworkers had ever been involved in homosexual relationships or distinctly homosexual conduct. Nor does the record contain evidence from which the inference could fairly be drawn that Cundiff and Ricks, two openly heterosexual men with no history of homosexual conduct inside or outside of the workplace, were motivated by sexual desire for King and not by animus, power, or whatever it is that drives bullies to single out others for taunting and ridicule. Even though Cundiff and Ricks directed crude and sexually suggestive language towards King, no reasonable jury could find that those two men were motivated by a genuine sexual desire for or attraction to King in these circumstances. Nonetheless, this fact is not fatal to King's case given that "harassing conduct need not be motivated by sexual desire to support an inference of discrimination on the basis of sex." *Oncale,* 523 U.S. at 80, 118 S.Ct. 998. Sexual desire is a convincing, but not a necessary, element in showing discrimination because of sex. *See Harbert–Yeargin,* 266 F.3d at 522 n. 6 (noting that while the harasser does not have to be homosexual to show same-sex sexual harassment, "[w]hen the harasser is a homosexual, ... the conclu-

sion that the harassment was gender based is defensible.").

King might also prove discrimination on the basis of sex by showing that other male employees were harassed in such sex-specific and derogatory terms by another man as to make it clear that the harasser was motivated by general hostility to the presence of men in the workplace. *Oncale*, 523 U.S. at 80, 118 S.Ct. 998. Again, King has made no such showing. This record demonstrates beyond peradventure that he was harassed because Cundiff and Ricks thought–whether correctly or not is of no consequence–that he was gay, not because he is a male. In *Spearman v. Ford Motor Co.*, 231 F.3d 1080 (7th Cir.2000), *cert. denied*, 532 U.S. 995, 121 S.Ct. 1656, 149 L.Ed.2d 638 (2001), the Seventh Circuit made three notable points in discussing workplace harassment by males against a male co-worker whom the harassers believed was a homosexual. First, quoting *Price Waterhouse v. Hopkins*, 490 U.S. 228, 251, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), the court stated that "[r]emarks at work that are based on sex-stereotypes do not inevitably prove that gender played a part in a particular employment decision. The plaintiff must show that the employer actually relied on [the plaintiff's] gender in making its decision.'" *Spearman*, 231 F.3d at 1085. Second, the court noted that even though the plaintiff's "harassers used sexually explicit, vulgar insults to express their anger at him over work-related conflicts[,] ... these conflicts did not arise because he is a man[,] ... and such conduct does not constitute sexual harassment." *Id.* Third, the animosity directed towards the plaintiff because of his apparent sexual orientation is, the court held, different from discrimination on the basis of sex. *Id.*

Finally, King does not claim that the harassers at Super Service treated men comparatively worse than women. Even if the bullies, acting upon a warped sense of chivalry, would not subject a woman to the same sort of harassment they directed at King, such a difference in treatment is still not adequate to show discrimination on the basis of sex if the plaintiff cannot show either (1) a general bias against men in the workplace, or (2) discrimination against King specifically because he is a male. *See Harbert-Yeargin*, 266 F.3d at 521 (discussing what a plaintiff must show to prove a Title VII violation). Like the circumstances we addressed in *Harbert-Yeargin*, we find that "what went on [at Super Service] was gross, vulgar, male horseplay.... It was the classic example of men behaving badly." *Id.* at 522. The individuals who harassed King were cruel and vile, and their conduct would not be tolerated by any respectable employer. However, their harassment of King does not, in this context, fall under the umbrella of conduct prohibited by Title VII, nor does the constructive discharge that King claims resulted from that harassment.

### III

For the foregoing reasons, we AFFIRM the judgment of the district court.