*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 06a0252p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

CHRISTOPHER VICKERS,

        *Plaintiff-Appellant,*

    *v.*

FAIRFIELD MEDICAL CENTER, STEVE ANDERSON,
KORY J. DIXON, JOHN MUELLER, and "JANE DOE"
DIXON,

        *Defendants-Appellees.*

No. 04-3776

>

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 03-00858—Gregory L. Frost, District Judge.

Argued: June 8, 2005

Decided and Filed: July 19, 2006

Before: SILER and GIBBONS, Circuit Judges; LAWSON, District Judge.[*]

———————————

**COUNSEL**

**ARGUED:** Randi A. Barnabee, SMITHBARNABEE & CO., LPA, Bedford, Ohio, for Appellant.
William R. Case, THOMPSON HINE, Columbus, Ohio, Lois A. Gruhin, ZASHIN & RICH,
Columbus, Ohio, for Appellees. **ON BRIEF:** Randi A. Barnabee, SMITHBARNABEE & CO.,
LPA, Bedford, Ohio, for Appellant. William R. Case, THOMPSON HINE, Columbus, Ohio, Lois
A. Gruhin, ZASHIN & RICH, Columbus, Ohio, Helena Oroz, Stephen S. Zashin, ZASHIN & RICH,
Cleveland, Ohio, for Appellees.

    GIBBONS, J., delivered the opinion of the court, in which SILER, J., joined. LAWSON,
D. J. (pp. 9-12), delivered a separate dissenting opinion.

———————————

[*]The Honorable David M. Lawson, United States District Judge for the Eastern District of Michigan, sitting
by designation.

———————————

**OPINION**

———————————

JULIA SMITH GIBBONS, Circuit Judge.  Christopher Vickers brought a claim against Fairfield Medical Center (FMC), three co-workers, and a co-worker's spouse alleging sex discrimination, sexual harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, conspiracy to violate Vickers' equal protection rights in violation of 42 U.S.C. § 1985(3), failure to prevent the conspiracy in violation of 42 U.S.C. § 1986, and twenty-one state law claims.  The district court granted defendants' motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), finding that Vickers could not prevail on any of his federal claims as a matter of law.  The district court declined to exercise supplemental jurisdiction over the state law claims.  Vickers now appeals.

For the following reasons, we affirm the decision of the district court.

**I.**

Vickers was employed as a private police officer by Fairfield Medical Center in Lancaster, Ohio.  Kory Dixon and John Mueller were also police officers at FMC and often worked with Vickers.  Steve Anderson was Police Chief of FMC's police department and was Vickers' supervisor.

Vickers' seventy-one page complaint is extremely detailed.  It gives a virtually day-by-day account of Vickers' allegations of harassment.  According to the complaint, Vickers befriended a male homosexual doctor at FMC and assisted him in an investigation regarding sexual misconduct that had allegedly occurred against the doctor.  Once his co-workers found out about the friendship, Vickers contends that Dixon and Mueller "began making sexually based slurs and discriminating remarks and comments about Vickers, alleging that Vickers was 'gay' or homosexual, and questioning his masculinity."  Vickers asserts that following a vacation in April 2002 to Florida with a male friend, Dixon's and Mueller's harassing comments and behavior increased.  Vickers asserts that Anderson witnessed the harassing behavior but took no action to stop it and frequently joined in the harassment.  Vickers asserts that he has never discussed his sexuality with any of his co-workers.

Vickers contends that he was subject to daily instances of harassment at the hands of his co-workers from May 2002 through March 2003.  The allegations of harassment include impressing the word "FAG" on the second page of Vickers' report forms, frequent derogatory comments regarding Vickers' sexual preferences and activities, frequently calling Vickers a "fag," "gay," and other derogatory names, playing tape-recorded conversations in the office during which Vickers was ridiculed for being homosexual, subjecting Vickers to vulgar gestures, placing irritants and chemicals in Vickers' food and other personal property, using the nickname "Kiss" for Vickers, and making lewd remarks suggesting that Vickers provide them with sexual favors.

Vickers also asserts that on several occasions, he was physically harassed by his co-workers.  According to his complaint, on October 20, 2002, Vickers and Mueller were conducting handcuff training.  Dixon handcuffed Vickers and then simulated sex with Vickers while Anderson photographed this incident.  Vickers downloaded the digital picture and placed it in his mailbox, intending to take it home later, but it was removed from his mailbox.  Vickers contends that a few days later, Dixon's wife, a nurse at Grant Medical Center, faxed the picture to FMC's Registration Center, where several people saw it.  Vickers further contends that the picture was hanging up in a window at FMC on January 15, 2003, where FMC officers, staff and visitors could see it.  On other occasions, Vickers' co-workers repeatedly touched his crotch with a tape measure, grabbed Vickers'

chest while making derogatory comments, tried to shove a sanitary napkin in Vickers' face, and simulated sex with a stuffed animal and then tried to push the stuffed animal into Vickers' crotch.

Vickers considered reporting the harassment he was experiencing to FMC's Vice-President or President but asserts that Anderson confronted Vickers before he reported the harassment, telling him that reporting the harassment would be futile, as it would not change the work environment. Vickers spoke with Anderson, Dixon, and Mueller several other times about the harassment, but no action appears to have been taken. In April 2003, Vickers retained a lawyer to aid him in dealing with the harassment he was experiencing on the job. Vickers' attorney met with FMC representatives, at which time the representatives stated that they would begin investigating Vickers' complaints immediately. In connection with the investigation, Vickers asserts that Anderson, Dixon and Mueller, among others, were interviewed.

FMC's counsel informed Vickers' attorney at the conclusion of the interview that FMC did not believe that Vickers had a "legally actionable claim" against them. Shortly thereafter, Vickers met with the human resources department at FMC, where he learned that Anderson, Dixon and Mueller had been suspended for staggered periods as a result of FMC's investigation into Vickers' complaints. Vickers was told that human resources would attempt to rearrange Vickers' schedule in order to minimize his contact with Anderson, Mueller, and Dixon. Vickers was also informed during this meeting that the investigation had revealed actionable misconduct by Vickers, but that human resources had elected not to pursue any action against him in light of the harassment Vickers had experienced. Vickers claims that human resources refused to provide specific information regarding Vickers' alleged misconduct despite his request.

Vickers asserts that, contrary to the statements of human resources regarding a schedule shift, he continued to work closely with Anderson, Dixon and Mueller. Vickers contends that Dixon and Mueller were openly hostile toward him during this time period. Despite human resources' instructions to all involved parties to keep Vickers' complaint confidential, word of the situation spread. Vickers met with human resources again and was assured that appropriate action would be taken. A few days later, Anderson informed Vickers that his request to transfer shifts had been denied. Soon thereafter, Anderson informed Vickers that he was required to meet with the human resources department. Vickers was told by a co-worker that the meeting was for the purpose of initiating a personnel action against him "in order to discredit him" if he filed a lawsuit against FMC. Vickers attempted to discern from human resources whether the meeting was for disciplinary purposes. He was told that it was in fact a disciplinary meeting and that he was informed that he was not allowed to have an attorney present at the meeting. Vickers spoke with his attorney and thereafter decided to resign from his position at FMC.

Vickers filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on June 19, 2003, and the EEOC issued a right to sue letter on July 8, 2003. Vickers filed the instant action against FMC, Anderson, Dixon, Mueller, and "Jane Doe" Dixon (Dixon's wife) on or about September 19, 2003 in the United States District Court for the Southern District of Ohio. The complaint alleged sex discrimination, sexual harassment, and retaliation in violation of Title VII, 42 U.S.C. § 2000e *et seq.*, conspiracy to violate Vickers' equal protection rights in violation of 42 U.S.C. § 1985(3), failure to prevent the conspiracy in violation of 42 U.S.C. § 1986, and twenty-one state law claims.

All defendants-appellees filed a joint motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) on or about January 21, 2004. On May 5, 2004, the district court granted defendants-appellees' motion on the federal claims pursuant to Federal Rule of Civil Procedure 12(c) and declined to exercise supplemental jurisdiction over Vickers' state law claims. The district court granted the motion based on the fact that Title VII does not protect individuals from discrimination based on sexual orientation and that Supreme Court and Sixth Circuit case law

do not recognize Vickers' claims of harassment based on being perceived as homosexual as violations of Title VII.  Vickers filed a timely notice of appeal.[1]

## II.

We review the district court's dismissal of a complaint pursuant to Rule 12(c) *de novo*. *Smith v. City of Salem*, 378 F.3d 566, 570 (6th Cir. 2004).  The manner of review under Rule 12(c) is the same as a review under Rule 12(b)(6); we must "construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of the claims that would entitle relief." *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998).

Vickers argues on appeal that the district court erred in finding that he cannot prevail on his Title VII claims as a matter of law.  Vickers contends that while some of the facts alleged in the complaint establish, as the district court found, that the discrimination Vickers experienced was motivated by Vickers' perceived homosexuality, more of the facts suggest that Vickers' harassers were motivated by Vickers' gender non-conformity.  As a result, Vickers argues, his claim is covered under the sex stereotyping theory of liability embraced by the Supreme Court in *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989).  Vickers also argues that this circuit's opinion in *Smith v. City of Salem*, 378 F.3d at 566, an opinion released after the district court granted defendants-appellees' motion in the current case, sufficiently changes this circuit's view of same-sex harassment such that his claim is now viable.

The district court found that Vickers' allegations, if proven, could not support a finding that the harassment and discrimination he endured occurred because he was male, and thus his claim failed as a matter of law.  The district court found that Vickers claim could not fit within the sex stereotyping theory of liability under *Price Waterhouse*, 490 U.S. at 228.  The district court noted that Vickers had not alleged that the harassers were motivated by sexual desire for Vickers or by general hostility for men in the workplace, nor was any information presented regarding how females were treated in comparison at FMC.  Although the district court expressed sympathy for Vickers' situation, the district court found that Vickers pled no harassment or discrimination claim under Title VII.

Title VII of the Civil Rights Act of 1964 prohibits an employer from discriminating against an individual "with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  As is evident from the above-quoted language, sexual orientation is not a prohibited basis for discriminatory acts under Title VII.  However, the Supreme Court has held that same-sex harassment is actionable under Title VII under certain circumstances. *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 82 (1998); *see also Rene v. MGM Grand Hotel, Inc.*, 305 F.3d 1061, 1063 (9th Cir. 2002) (en banc) ("[S]exual orientation is irrelevant for purposes of Title VII. It neither provides nor precludes a cause of action for sexual harassment.").  Likewise, individuals who are perceived as or who identify as homosexuals are not barred from bringing a claim for sex discrimination under Title VII.  *See Smith*, 378 F.3d at 574-75.

In order to establish a *prima facie* case of sex discrimination under Title VII, a plaintiff must show (1) that he is a member of a protected class, (2) that he was subject to an adverse employment decision, (3) that he was qualified for the position, and (4) that he was treated differently than a

---

[1]Although Vickers claims in his brief to be appealing the district court's decision on all of his federal claims, he fails to make any argument regarding his Title VII retaliation claim and his claims under 42 U.S.C. §§ 1985(3) and 1986.  These claims are therefore waived. *See Robinson v. Jones*, 142 F.3d 905, 906 (6th Cir. 1998) (issues raised before district court but not raised on appeal are deemed abandoned and are not reviewable on appeal).

similarly situated individual outside the protected class. *Humenny v. Genex Corp.*, 390 F.3d 901, 906 (6th Cir. 2004). In order to bring a hostile work environment sexual harassment claim, a plaintiff must show the following: (1) the employee was a member of a protected class; (2) the employee was subject to unwelcome sexual harassment; (3) the harassment complained of was based on sex; (4) the charged sexual harassment created a hostile work environment; and (5) the existence of employer liability. *Clark v. United Parcel Serv., Inc.*, 400 F.3d 341, 347 (6th Cir. 2005). Vickers relies on the theory of sex stereotyping adopted by the Supreme Court in *Price Waterhouse*, 490 U.S. at 228, to support both his sex discrimination and sexual harassment claims. In *Price Waterhouse*, the plaintiff, a senior manager in an accounting firm, was passed over for partnership in part because she was too "'macho'" and "'overcompensated for being a woman.'" *Id.* at 235. The plaintiff was told that in order to improve her chances for partnership, she should "'walk more femininely, talk more femininely, dress more femininely, wear make-up, have her hair styled, and wear jewelry.'" *Id.* The Supreme Court held that making employment decisions based on sex stereotyping, i.e., the degree to which an individual conforms to traditional notions of what is appropriate for one's gender, is actionable discrimination under Title VII. *See id.* at 250 ("In the specific context of sex stereotyping, an employer who acts on the basis of a belief that a woman cannot be aggressive, or that she must not be, has acted on the basis of gender.").

Vickers contends that this theory of sex stereotyping supports his claim, and thus, the district court should be reversed. Vickers argues in his brief that he was discriminated against because his harassers objected to "those aspects of homosexual behavior in which a male participant assumes what Appellees perceive as a traditionally female–or less masculine–role."[2] In other words, Vickers contends that in the eyes of his co-workers, his sexual practices, whether real or perceived, did not conform to the traditionally masculine role. Rather, in his supposed sexual practices, he behaved more like a woman.

We conclude that the theory of sex stereotyping under *Price Waterhouse* is not broad enough to encompass such a theory. The Supreme Court in *Price Waterhouse* focused principally on characteristics that were readily demonstrable in the workplace, such as the plaintiff's manner of walking and talking at work, as well as her work attire and her hairstyle. *See id.* at 235. Later cases applying *Price Waterhouse* have interpreted it as applying where gender non-conformance is demonstrable through the plaintiff's appearance or behavior. *See, e.g., Dawson v. Bumble & Bumble*, 398 F.3d 211, 218 (2d Cir. 2005) (stating that an individual may have a viable Title VII discrimination claim where the employer acted out of animus toward his or her "*exhibition* of behavior considered to be stereotypically inappropriate for their gender") (emphasis added); *id.* at 221 ("Generally speaking, one can fail to conform to gender stereotypes in two ways: (1) through behavior or (2) through appearance."); *Smith*, 378 F.3d at 573 (*Price Waterhouse* was concerned with protecting women "who failed to conform to social expectations concerning how a woman should look and behave"); *Jespersen v. Harrah's Operating Co.*, 392 F.3d 1076, 1082 (9th Cir. 2004); *Weinstock v. Columbia Univ.*, 224 F.3d 33, 57 (2d Cir. 2000). By contrast, the gender non-conforming behavior which Vickers claims supports his theory of sex stereotyping is not behavior observed at work or affecting his job performance. Vickers has made no argument that his appearance or mannerisms on the job were perceived as gender non-conforming in some way and provided the basis for the harassment he experienced. Rather, the harassment of which Vickers complains is more properly viewed as harassment based on Vickers' perceived homosexuality, rather than based on gender non-conformity.

In considering Vickers' sex stereotyping argument, the Second Circuit's recent opinion in *Dawson v. Bumble & Bumble*, 398 F.3d at 211, is instructive. In *Dawson*, a female former employee

---

[2] In support of this theory, Vickers notes that he was only teased about giving, not receiving fellatio, and about receiving anal sex.

of a hair salon and self-described lesbian attempted to bring a sex discrimination claim against her employer after she was terminated based on alleged gender stereotyping. *Id.* at 218. The plaintiff in that case complained that the discrimination she suffered was based on her non-conforming appearance. *Id.* at 221. The Second Circuit noted the faulty logic in viewing what is, in reality, a claim of discrimination based on sexual orientation as a claim of sex stereotyping:

> When utilized by an avowedly homosexual plaintiff, . . . gender stereotyping claims can easily present problems for an adjudicator. This is for the simple reason that stereotypical notions about how men and women should behave will often necessarily blur into ideas about heterosexuality and homosexuality. Like other courts, we have therefore recognized that a gender stereotyping claim should not be used to bootstrap protection for sexual orientation into Title VII.

*Id.* at 218 (internal quotation marks, citations, and alteration omitted). Although Vickers has declined to reveal whether or not he is, in fact, homosexual, the claim he presents displays precisely the kind of bootstrapping that the *Dawson* court warned against.

This court's opinion in *Smith v. City of Salem*, 378 F.3d at 566, does not alter this conclusion. The plaintiff in *Smith*, a lieutenant in the Salem Fire Department, was a transsexual undergoing a physical transformation from male to female. *Id.* at 568. The treatment resulted in a display of "'a more feminine appearance on a full-time basis.'" *Id.* The plaintiff was suspended based, at least in part, on co-workers' expressed concerns that "his appearance and mannerisms were not 'masculine enough.'" *Id.* In *Smith*, the court made explicit that a plaintiff cannot be denied coverage under Title VII for sex discrimination merely based on a classification with a group that is not entitled to coverage. *See id.* at 575 ("Sex stereotyping based on a person's gender non-conforming behavior is impermissible discrimination, irrespective of the cause of that behavior; a label, such as 'transsexual,' is not fatal to a sex discrimination claim where the victim has suffered discrimination because of his or her gender non-conformity."). The point is well-taken; we do not suggest that Vickers' claim fails merely because he has been classified by his co-workers and supervisor, rightly or wrongly, as a homosexual. Rather, his claim fails because Vickers has failed to allege that he did not conform to traditional gender stereotypes in any observable way at work. Thus, he does not allege a claim of sex stereotyping. The *Smith* opinion does nothing to lessen the requirement that a plaintiff hoping to succeed on a claim of sex stereotyping show that he "fails to act and/or identify with his or her gender." *Id. See also Barnes v. City of Cincinnati*, 401 F.3d 729, 738 (6th Cir. 2005) (affirming district court's denial of defendant's motion for judgment as a matter of law on discrimination claim where pre-operative male-to-female transsexual was demoted based on his "ambiguous sexuality and his practice of dressing as a woman" and his co-workers' assertions that he was "not sufficiently masculine").

Ultimately, recognition of Vickers' claim would have the effect of *de facto* amending Title VII to encompass sexual orientation as a prohibited basis for discrimination. In all likelihood, any discrimination based on sexual orientation would be actionable under a sex stereotyping theory if this claim is allowed to stand, as all homosexuals, by definition, fail to conform to traditional gender norms in their sexual practices. Indeed, this may be Vickers' intent; he argues in his brief that the unique nature of homosexuality entitles it to protection under Title VII sex discrimination law. Further, at oral argument, Vickers argued that the act of identification with a particular group, in itself, is sufficiently gender non-conforming such that an employee who so identifies would, by this very identification, engage in conduct that would enable him to assert a successful sex stereotyping claim. In making this argument, Vickers relies on a paragraph in *Smith*, 369 F.3d 912, 921-22 (6th Cir. 2004). Unfortunately for Vickers, the paragraph he relied on in making this argument was voluntarily removed by the panel and the opinion was subsequently reissued without this language. 378 F.3d at 566. The decision to omit the language from the *Smith* opinion strongly indicates that the law simply does not embrace his claim. While the harassment alleged by Vickers reflects

conduct that is socially unacceptable and repugnant to workplace standards of proper treatment and civility, Vickers claim does not fit within the prohibitions of the law. *See Bibby v. Phila. Coca-Cola Bottling Co.*, 260 F.3d 257, 265 (3d Cir. 2001) ("Harassment on the basis of sexual orientation has no place in our society. Congress has not yet seen fit, however, to provide protection against such harassment.") (internal citations omitted).

Nor does the prevailing case law on same-sex sexual harassment provide an avenue for Vickers' claim. As noted above, the Supreme Court has stated that Title VII covers hostile work environment claims based on same-sex harassment. *Oncale*, 523 U.S. at 79. However, an individual does not make out a claim of sexual harassment "merely because the words used have sexual content or connotations." *Id.* at 80. Rather, "[t]he critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Id.* (internal citation and quotation marks omitted). The *Oncale* court provided three ways a male plaintiff could establish a hostile work environment claim based on same-sex harassment: (1) where the harasser making sexual advances is acting out of sexual desire; (2) where the harasser is motivated by general hostility to the presence of men in the workplace; and (3) where the plaintiff offers "direct comparative evidence about how the alleged harasser treated members of both sexes in a mixed-sex workplace." *Id*. at 80-81; *see King v. Super Serv., Inc*., 68 Fed. Appx. 659, 663 (6th Cir. 2003).

Nothing in Vickers' complaint indicates that his harassers acted out of sexual desire. Similarly, the complaint does not support an inference that there was general hostility toward men in the workplace. Finally, Vickers included no information regarding how women were treated in comparison to men at FMC. In fact, defendants-appellees maintain that Vickers worked in an all-male workforce, an assertion that Vickers has apparently not disputed.

The Sixth Circuit has previously rejected hostile work environment claims brought by plaintiffs in very similar factual scenarios in one published and two unpublished cases. *See EEOC v. Harbert-Yeargin, Inc.*, 266 F.3d 498, 519-23 (6th Cir. 2001) (hostile work environment claim rejected where plaintiff experienced frequent inappropriate touching because though harassment was sexual in nature, it could not be said to be "because of . . . sex" as required by Title VII); *King*, 68 Fed Appx. at 664 (rejecting hostile work environment claim where plaintiff was subject to verbal and physical abuse insinuating that plaintiff was a homosexual because his claim did not fit into the three examples given in *Oncale* of same sex harassment); *Dillon v. Frank*, No. 90-2290, 1992 WL 5436, at * 7 (6th Cir. Jan 15, 1992) (rejecting plaintiff's claim where plaintiff suffered severe verbal harassment and physical assault based on co-workers' belief that plaintiff was a homosexual, because the plaintiff failed to allege that "harassment was directed at [him] for a statutorily impermissible reason"). Other circuits have also failed to recognize hostile work environment claims in similar factual situations because the plaintiff could not show that the harassment occurred because of sex. *See e.g., Bibby*, 260 F.3d at 264 (hostile work environment claim fails where plaintiff was subjected to vulgar statements regarding his sexual orientation and practices accompanied by physical assault and graffiti because the plaintiff "[h]is claim was, pure and simple, that he was discriminated against because of his sexual orientation."); *Spearman v. Ford Motor Co.*, 231 F.3d 1080, 1085 (7th Cir. 2000) (male employee who endured threatening and hostile statements, taunting, and graffiti did not establish hostile work environment claim because his co-workers "maligned him because of his apparent homosexuality, and not because of his sex"); *see id.* at 1086 ("Title VII is not a 'general civility code' for the workplace; it does not prohibit harassment in general or of one's homosexuality in particular.") (quoting *Oncale*, 523 U.S. at 81); *Higgins v. New Balance Athletic Shoe, Inc.*, 194 F.3d 252, 258 (1st Cir. 1999) (rejecting hostile work environment claim where plaintiff was verbally harassed and mocked due to his homosexuality because he failed to show that harassment occurred because of his sex). *But see Rene*, 305 F.3d at 1066 (finding that male employer who was subject to severe, pervasive, and unwelcome physical conduct was harassed because of his sex because he was subjected to attacks "which targeted body

parts clearly linked to his sexuality"). Based on the foregoing precedent, Vickers has failed to plead a hostile work environment claim.

## III.

For the foregoing reasons, we affirm the decision of the district court granting defendants-appellees' motion for judgment on the pleadings pursuant to Rule 12(c) as well as the district court's decision not to exercise supplemental jurisdiction over Vickers' state law claims.

---

**DISSENT**

---

DAVID M. LAWSON, District Judge, dissenting. As the majority correctly states, in *Price Waterhouse v. Hopkins*, the Supreme Court held that "making employment decisions based on sex stereotyping, i.e., the degree to which an individual conforms to traditional notions of what is appropriate for one's gender, is actionable under Title VII." *Ante* at 5. Because I believe that the plaintiff in this case has pleaded exactly that, I conclude that he has stated a cognizable claim in his complaint that should have survived dismissal under the standard of review that applies to motions under Federal Rule of Civil Procedure 12(c). Since the majority has concluded otherwise, I must respectfully dissent.

I.

It is beyond debate that Title VII does not prohibit workplace discrimination or harassment based on sexual preference, sexual orientation, or homosexuality. It is equally clear that employment decisions or workplace harassment that are based on the perception that the employee is not masculine enough or feminine enough – that is, he or she fails "to conform to [gender] stereotypes," *Price Waterhouse v. Hopkins*, 490 U.S. 228, 272 (1989), (O'Connor, J. concurring) – violates Title VII's declaration that "[i]t shall be an unlawful employment practice for an employer . . . to discriminate against any individual . . . because of . . . sex." 42 U.S.C. § 2000e-2(a)(1).

The majority correctly points out that a sexual harassment claim based on a hostile workplace environment requires the claimant to plead that he was a member of a protected class, he was subjected to unwelcome sexual harassment, the harassment was based on sex, the conduct created a hostile environment, and the employer is accountable for the condition. *Ante* at 5 (citing *Clark v. United Parcel Serv., Inc.*, 400 F.3d 341, 347 (6th Cir. 2005)). The thrust of the opinion is that Vickers failed to plead that the harassment was based on sex because it had its roots in the harassers' perception that Vickers's private sexual practices were woman-like. The majority apparently believes that *Price Waterhouse* extends only to behavior and appearances that manifest themselves in the workplace, and not to private sexual conduct, beliefs, or practices that an employee might adopt or display elsewhere. It concludes, therefore, that Vickers's tormentors were motivated by Vickers's perceived homosexuality rather than an outward workplace manifestation of less-than-masculine gender characteristics.

However, I believe that such a reading of the complaint in this case is too narrow and imposes an obligation on the plaintiff that is more exacting at this stage of the proceedings than is required by the Federal Rules of Civil Procedure. Rule 8(a) requires only that the plaintiff set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Vickers's 71-page, 256-paragraph tome is hardly "short and plain." However, he does allege that his claims are "for unlawful discrimination on the basis of sex and/or sex stereotyping" and "perpetuation of a hostile working environment on the basis of sex." Compl. at ¶ 10(A) & (B), J.A. at 10. He then proceeds in excruciating detail to describe the vile and sexually explicit acts that allegedly were committed against him by defendants Dixon and Mueller, and which allegedly were approved or condoned by defendant Anderson. In the context of a motion for judgment on the pleadings, we, like the trial court, must view these allegations as true and "construe the complaint in the light most favorable to the plaintiff." *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998). "A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

I have no quarrel with the proposition that a careful distinction must be drawn between cases of gender stereotyping, which are actionable, and cases denominated as such that in reality seek protection for sexual-orientation discrimination, which are not. Nor do I believe that gender stereotyping is actionable *per se* under Title VII, although certainly it may constitute evidence of discrimination on the basis of sex. As Judge Posner of the Seventh Circuit pointed out:

> [T]here is a difference that subsequent cases have ignored between, on the one hand, using evidence of the plaintiff's failure to wear nail polish (or, if the plaintiff is a man, his using nail polish) to show that her sex played a role in the adverse employment action of which she complains, and, on the other hand, creating a subtype of sexual discrimination called "sex stereotyping," as if there were a federally protected right for male workers to wear nail polish and dresses and speak in falsetto and mince about in high heels, or for female ditchdiggers to strip to the waist in hot weather.

*Hamm v. Weyauwega Milk Products, Inc.*, 332 F.3d 1058, 1067 (7th Cir. 2003) (Posner, J. concurring). However, these distinctions can be complicated, and where, as here, the plaintiff has pleaded facts from which a fact finder could infer that sex (and not simply homosexuality) played a role in the employment decision and contributed to the hostility of the work environment, drawing the line should not occur at the pleading stage of the lawsuit. "Claims lacking factual merit are properly dealt with through summary judgment under Rule 56. . . . This is because under the notice pleading standard of the Federal Rules, courts are reluctant to dismiss colorable claims which have not had the benefit of factual discovery." *Evans-Marshall v. Bd. of Educ. of the Tipp City Exempted Vill. Sch. Dist.*, 428 F.3d 223, 228 (6th Cir. 2005) (citing *Conley*, 355 U.S. at 48). Most of the cases relied on by the majority were decided on summary judgment or after trial. *See, e.g., Price Waterhouse*, 490 U.S. 228 (review of decision following bench trial); *Dawson v. Bumble & Bumble*, 398 F.3d 211 (2d Cir. 2005) (review of summary judgment); *Jespersen v. Harrah's Operating Co.*, 392 F.3d 1076 (9th Cir. 2004) (same); *Rene v. MGM Grand Hotel, Inc.*, 305 F.3d 1061, 1063 (9th Cir. 2002) (en banc) (same); *EEOC v. Harbert-Yeargin, Inc.*, 266 F.3d 498 (6th Cir. 2001) (review of jury verdict); *Bibby v. Phila. Coca-Cola Bottling Co.*, 260 F.3d 257 (3d Cir. 2001) (review of summary judgment); *Weinstock v. Columbia Univ.*, 224 F.3d 33 (2d Cir. 2000) (same); *Spearman v. Ford Motor Co.*, 231 F.3d 1080 (7th Cir. 2000) (same); *Higgins v. New Balance Athletic Shoe, Inc.*, 194 F.3d 252, 258 (1st Cir. 1999) (same); *King v. Super Serv., Inc.*, 68 Fed. Appx. 659, 663 (6th Cir. 2003) (same). It behooves courts to view the evidence developed during discovery before declaring that a defendant's behavior was motivated by hostility to homosexuals rather than discrimination "because of . . . sex." 42 U.S.C. § 2000e-2(a)(1).

## II.

Looking at the allegations in this case, I cannot conclude that no set of facts could be proved that would entitle the plaintiff to relief. The allegations permit the conclusion that the defendants were hostile to the plaintiff because he was not masculine enough, justifying an inference that a female – or a man with female characteristics – would not be tolerated in the job of private police officer at the Fairfield Medical Center (FMC).

Vickers asserts that there are some twenty-five incidents of harassment that could be construed as evidence of the defendants' perception that Vickers was not masculine enough for them. To be sure, the conduct that Vickers cites for the most part requires following Vickers's argument from point to point, and it is not a crystal-clear statement of sex stereotyping due to the conflation with homosexual references. However, as the district court noted, Vickers does allege that he was not perceived as sufficiently masculine. In March of 2002, the complaint alleges, Vickers began investigating allegations of sexual misconduct against a male doctor at FMC by a "gay" complainant. Compl. at ¶ 15, J.A. at 23. Vickers ultimately befriended the individual and

assisted him in investigating the matter.  *Ibid.*  Fellow police officers Dixon and Mueller, upon learning of the investigation and that the complainant was a homosexual, suspected Vickers of being a homosexual "and *question*[*ed*] *his masculinity*."  Compl. at ¶ 16, J.A. at 23 (emphasis added).  Vickers alleges that he was a private person and did not share details of his personal life at work.

> In paragraph 250 of the complaint, Vickers states:

> Vickers does not make any claim of protected status on the basis of homosexuality *per se* – whether real or perceived – with regard to his Title VII claim. Vicker[s]'s claim is instead grounded in the body of sex-discrimination jurisprudence set forth by the landmark U.S. Supreme Court decision *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989), and its progeny. Although Title VII does not prohibit discrimination against homosexuals *per se* – whether real or perceived – the *Price Waterhouse* line of cases stands for the proposition, *inter alia*, that it is improper to discriminate in employment on the basis of real or perceived nonconformity with gender norms.

J.A. at 77.  Vickers cites at least one factual example of this perception: on January 22, 2003, Dixon informed Mueller that Vickers "*might jump your ass.  He did me for no reason when I walked in.*"  Compl. at ¶ 72, J.A. at 37.  According to Vickers, the following ensued:

> Dixon then proceeded to explain to Mueller that Vickers was in a bad mood. Mueller said, "*Maybe he is having a heavy (menstrual) flow day, huh?*"  Mueller then said to Vickers, "*Why don't you pluck that tampon out and put a new pad in and lose some of that pressure?*"

> Mueller walked out of the office momentarily, returning with a sanitary napkin which he tried to rub in Vickers' face.  Vickers said, "*What are you putting a tampon on me for?*"  Mueller snapped, "*You fucker, it's a fucking pad,*" and continued to try and put the sanitary napkin in Vickers' face.  Mueller then began making sexual panting noises, followed by sexual grunts and moans.  Mueller finally settled for taping the sanitary napkin to Vickers' uniform coat.

Compl. at ¶¶ 71-72, J.A. at 37.  When Vickers returned to work on January 25, 2003, Mueller asked Vickers if his mood had improved.  Compl. at ¶ 73, J.A. at 37.  Thus, Vickers alleges that he was subjected to harassment because he was perceived as being insufficiently masculine, Vickers clarifies in his complaint that the events alleged therein are indicative of the defendants' perception that Vickers does not measure up to their stereotypes of masculinity and that he does not wish his complaint to be construed as suggesting otherwise, the district court recognized that Vickers was alleging a claim of sex stereotyping, and Vickers cites at least one example where his conduct incited harassment because the defendants believed him to be acting like a woman.

There are other examples.  For instance, on one occasion when Vickers, Dixon, Mueller, and Anderson were working, Mueller extended a tape measure to touch Vickers's crotch several times until Vickers got angry and told Mueller to stop.  Anderson remarked that Vickers "must be tired, he's not in the mood to play."  Compl. at ¶¶ 65-67, J.A. at 35-36.  A few moments later, Dixon grabbed Vickers's breast and remarked "Kiss [the defendants' nickname for the plaintiff] has titties."  Compl. at ¶ 67, J.A. at 36.  At another point, Vickers's truck was rear-ended causing Dixon to express that he did not want his "favorite bitch" to get hurt and Anderson, Dixon, and Muller to joke that Vickers had been "rammed in the ass."  Compl. at ¶¶ 111-12, J.A. at 45.  In yet another instance, Anderson phoned the station, but when Vickers answered Anderson demanded to speak to "*a real officer.*"  Compl. at ¶ 115, J.A. at 46.  The complaint also contains an allegation that a note was left for the plaintiff in the workplace, purportedly from a woman, asking if he was "interested" but stating that "I know your plumbing is hooked up wrong."  Compl. at ¶ 124, J.A. at 48.

These allegations, in my view, provide a basis for the inference that the plaintiff was perceived as effeminate and therefore unworthy to be considered "a real officer." The permissible conclusion that emerges is that the plaintiff was not tolerated – and the defendants made the workplace environment hostile – because the job required only "manly men," not woman-like ones or women themselves. The complaint need only contain "direct *or inferential* allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Johnson v. City of Detroit*, 446 F.3d 614, 618 (6th Cir. 2006) (emphasis added). Certainly, the complaint is replete with allegations that the plaintiff also was harassed because of his perceived homosexuality. But as homosexuality is not a qualifying classification for relief under Title VII, neither is it disqualifying. That point has been made clear by this court's precedents. In *Smith v. City of Salem*, 378 F.3d 566 (6th Cir. 2004), the court reversed a judgment on the pleadings for the defendant in a claim brought by a transsexual male fireman under Title VII. "Sex stereotyping based on a person's gender non-conforming behavior is impermissible discrimination, irrespective of the cause of that behavior; a label, such as 'transsexual,' is not fatal to a sex discrimination claim where the victim has suffered discrimination because of his or her gender non-conformity." *Smith*, 378 F.3d at 575.

As in *Smith*, I believe that the plaintiff in this case has "alleged that his failure to conform to sex stereotypes concerning how a man should look and behave was the driving force behind Defendants' actions." *Id.* at 572. Following *Smith*, this court has held that "[s]ex stereotyping based on a person's gender non-conforming behavior is impermissible discrimination, irrespective of the cause of that behavior." *Barnes v. City of Cincinnati*, 401 F.3d 729, 737 (6th Cir. 2005) (citations omitted). Allegations that a plaintiff's "failure to conform to sex stereotypes concerning how a man should look and behave was the driving force behind defendant's actions" has been deemed sufficient to "state[] a claim for relief pursuant to Title VII's prohibition of sex discrimination." *Ibid.* Therefore, I must conclude that Vickers "has sufficiently pleaded claims of sex stereotyping and gender discrimination." *Smith*, 378 F.3d at 572.

### III.

The plaintiff has set forth sufficient facts in his complaint to support a Title VII claim. I do not believe we can conclude on the basis of the pleadings alone that the harassment endured by the plaintiff was motivated solely by the defendants' perception that he was a homosexual, as distinguished from a belief that for reasons other than sexual preference the plaintiff did not conform to the stereotypical image of masculinity, as the plaintiff has alleged in many ways, at least inferentially. "A motion for judgment on the pleadings under Rule 12(c) may be granted only if all material issues can be resolved on the pleadings by the district court; otherwise, a summary judgment motion or a full trial is necessary." Wright & Miller, *Federal Practice and Procedure: Civil 3d*, § 1368 pp. 248-51 (2004). Because the majority believes that the case can be resolved on the pleadings alone, I respectfully dissent.