[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-15499
_____

D.C. Docket No. 1:13-cv-03573-HLM


FLANIGAN'S ENTERPRISES, INC. OF GEORGIA,
FANTASTIC VISUALS, LLC,

Plaintiffs - Appellants,

MELISSA DAVENPORT,
MARSHALL G. HENRY,

Intervenors - Plaintiffs -
Appellants,

versus

CITY OF SANDY SPRINGS, GEORGIA,

Defendant - Appellee.
_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(August 2, 2016)

Before HULL, WILSON, and ANDERSON, Circuit Judges.

WILSON, Circuit Judge:

In this appeal, we review the district court's dismissal of two complaints that challenge the constitutionality of a municipal ordinance prohibiting the sale, rental, or lease of obscene material. After the benefit of briefing and oral argument, we conclude that the Fourteenth Amendment Due Process Clause claim is foreclosed by our prior holding in *Williams v. Attorney General* (*Williams IV*), 378 F.3d 1232 (11th Cir. 2004), and the district court properly entered judgment on the pleadings for the City of Sandy Springs as to Intervenor-Appellant Henry's First Amendment claims that the law burdens his artistic expression. The district court committed no reversible error as to any other claim properly raised on appeal. Accordingly, we affirm.

I

On April 21, 2009, the City of Sandy Springs, Georgia (the City) enacted into law several provisions that, *inter alia*, prohibit the commercial distribution of sexual devices within the City. Multiple adult entertainment establishments and other businesses affected by the provisions sued the City in response. In this severed portion of that litigation, Plaintiffs-Appellants Flanigan's Enterprises, Inc. of Georgia (Flanigan's) and Fantastic Visuals, LLC (Inserection) (collectively, the Plaintiffs), as well as Intervenors-Appellants Melissa Davenport and Marshall

2

Henry (collectively, the Intervenors), brought, in relevant part, a Fourteenth Amendment Due Process Clause challenge to Ordinance 2009-04-24 (the Ordinance), codified at section 38-120 of the City's Code of Ordinances.[1]  Section 38-120 criminalizes the commercial distribution of obscene material and defines "[a]ny device designed or marketed as useful primarily for the stimulation of human genital organs" as obscene.  Sandy Springs, Ga., Code of Ordinances ch. 38, § 38-120(a), (c) [hereinafter § 38-120].[2]

Inserection is an adult bookstore in Sandy Springs that sells sexually explicit materials and items, including sexual devices.  Davenport suffers from multiple sclerosis and uses sexual devices with her husband to facilitate intimacy.  She seeks to purchase sexual devices in Sandy Springs for her own use, as well as to sell sexual devices to others in Sandy Springs who suffer from the same or a

---

[1] In October 2009, the Plaintiffs sued the City, alleging that recent amendments to the City's Code of Ordinances were unconstitutional.  These amendments included licensing and regulating schemes of establishments that serve alcohol in the City, the zoning and licensure of adult entertainment establishments and adult bookstores, and restrictions on the sale of sexual devices.  Four years later, after the City moved for summary judgment, the district court issued an order severing the Plaintiffs' challenge to the Ordinance's prohibition on the sale of sexual devices from the other pending challenges.  This permitted additional affected parties to intervene in the litigation without slowing the progress of the other challenges.  In March 2014, the district court granted Davenport and Henry's motion to intervene.

Although Flanigan's participated in the Notice of Appeal to this court, it neither provided briefing of its own nor indicated that Inserection brings any claim on its behalf.  "When an appellant fails to challenge properly on appeal one of the grounds on which the district court based its judgment, he is deemed to have abandoned any challenge of that ground, and it follows that the judgment is due to be affirmed."  *Sapuppo v. Allstate Floridian Ins.*, 739 F.3d 678, 680 (11th Cir. 2014).  In failing to provide any briefing whatsoever, Flanigan's abandoned its appeal.

In addition, Inserection did not brief its state constitution claim on appeal, and the Intervenors did not brief either their overbreadth or state constitution claims.  Therefore, those claims are abandoned on appeal.  *See id.*

[2] For ease of reference, we attach § 38-120 in an appendix to this opinion.

similar condition.  Henry is an artist who uses sexual devices in his artwork.  He seeks to purchase sexual devices in Sandy Springs for his own private, sexual activity and for use in his artwork, as well as to sell his artwork in Sandy Springs.

After the Intervenors entered the litigation and filed their complaint, the City filed an answer and moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  The district court granted the City's motion and entered an order upholding the Ordinance against each challenge.  The Plaintiffs and the Intervenors together filed a timely notice of appeal, arguing that the district court erred in entering judgment in favor of the City.

## II

We review de novo the district court's entry of judgment on the pleadings pursuant to Rule 12(c).  *Horsley v. Rivera*, 292 F.3d 695, 700 (11th Cir. 2002).  "Judgment on the pleadings under Rule 12(c) is appropriate when there are no material facts in dispute, and judgment may be rendered by considering the substance of the pleadings and any judicially noticed facts."  *Id.*  In reviewing whether judgment was appropriately entered, "we accept the facts in the complaint as true and we view them in the light most favorable to the nonmoving party."  *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998).  A complaint may only be dismissed under Rule 12(c) if "it is clear that the plaintiff

would not be entitled to relief under any set of facts that could be proved consistent with the allegations." *See Horsley*, 292 F.3d at 700.

III

The Intervenors and Inserection (collectively, the Appellants) argue that the Ordinance is unconstitutional because it violates the Due Process Clause of the Fourteenth Amendment.[3] The Fourteenth Amendment provides: "No State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The Supreme Court has long held that the Due Process Clause contains a substantive component that "bar[s] certain government actions regardless of the fairness of the procedures used to implement them." *See, e.g.*, *County of Sacramento v. Lewis*, 523 U.S. 833, 840, 118 S. Ct. 1708, 1713 (1998) (internal quotation marks omitted). The Appellants contend that they have a fundamental right to engage in acts of private, consensual sexual intimacy, and that the Ordinance burdens this right. The City responds that this claim is foreclosed by our prior holding in *Williams IV*.

In *Williams IV*, the American Civil Liberties Union (ACLU) brought a constitutional challenge against an Alabama statute that prohibited the sale of sexual devices. *See* 378 F.3d at 1233. The ACLU claimed that the law violated a

---

[3] The Intervenors raise this claim on behalf of themselves and those similarly situated. Inserection raises this claim on behalf of its customers. For ease of reference, we refer to this claim as belonging to the Appellants, collectively.

fundamental right to sexual privacy, which includes a right to use the devices in the privacy of one's home. *See id.* at 1235. We concluded that the Supreme Court's then-recent decision in *Lawrence v. Texas*[4] identified no such fundamental right and, utilizing the *Washington v. Glucksberg*[5] analysis for defining and assessing newly asserted fundamental rights, we concluded that our history and tradition did not support assigning constitutional protection to a right to sell, buy, and use sexual devices. *See Williams IV*, 378 F.3d at 1236, 1239–45. Consequently, we held that the Due Process Clause does not contain a right to buy, sell, and use sexual devices, and reversed the district court's ruling to the contrary. *See id.* at 1250.

The Appellants in this case challenge a law similar to the one at issue in *Williams IV* and present us with, effectively, the same arguments against its enforcement. Under this circuit's prior panel precedent rule, "a prior panel's holding is binding on all subsequent panels unless and until it is overruled or undermined to the point of abrogation by the Supreme Court or by this court sitting en banc." *In re Lambrix*, 776 F.3d 789, 794 (11th Cir. 2015) (per curiam) (internal quotation marks omitted). The Appellants urge this panel to overrule *Williams IV* in light of the Supreme Court's subsequent decisions in *United States v. Windsor*[6]

---

[4] 539 U.S. 558, 123 S. Ct. 2472 (2003).
[5] 521 U.S. 702, 720–21, 117 S. Ct. 2258, 2268 (1997).
[6] 570 U.S. ___, 133 S. Ct. 2675 (2013).

6

and *Obergefell v. Hodges*.[7]  Their strongest argument is that time has shown that

*Williams IV* erred in concluding *Lawrence* did not announce a constitutional right

to engage in acts of private, consensual sexual intimacy, and the Court has changed

its analysis of privacy-based constitutional rights such that the remainder of

*Williams IV* cannot stand.

To the extent *Lawrence* was ambiguous, the Appellants explain, *Windsor*

clarified that *Lawrence* announced a new constitutional right and that that right

could be implicated directly or indirectly.  In *Windsor*, the Court assessed the

constitutionality of the Defense of Marriage Act (DOMA), a federal law that, in

relevant part, amended the Dictionary Act to define "marriage" as "a legal union

between one man and one woman as husband and wife."  *See Windsor*, 133 S. Ct.

at 2683; 1 U.S.C. § 7.  The Court explained that DOMA's definition was

unconstitutional, *inter alia*, because it impermissibly interfered with the federal

constitutional right to "[p]rivate, consensual sexual intimacy"—a right the Court

indicated it had articulated in *Lawrence*.  *See Windsor*, 133 S. Ct. at 2692.  This

holding made clear that the Texas sodomy statute and DOMA's definitional

provision implicated the same liberty interest and that the scope of this liberty

interest could extend to invalidate a law that did not directly regulate sexual

conduct.  Although DOMA did not criminalize any sexual act—it merely supplied

---

[7] 576 U.S. ___, 135 S. Ct. 2584 (2015).

a definition to inform other laws—the Court still held it to be unconstitutional because the differentiation it imposed "demean[ed] the couple, *whose moral and sexual choices the Constitution protects*." *Id.* at 2694 (emphasis added) (citing *Lawrence*, 539 U.S. 558, 123 S. Ct. 2472).  Thus, the Appellants conclude, *Windsor* clarified not only that *Lawrence* announced a right to "[p]rivate, consensual sexual intimacy," *see id.* at 2692, but also that this liberty interest may be infringed by laws that seek to control moral or sexual choices, *see id.* at 2694.[8] For this reason, the Appellants argue that we erred in ruling that *Lawrence* did not create a "due process right of consenting adults to engage in private intimate sexual conduct." *See Williams IV*, 378 F.3d at 1236.[9]

---

[8] We note that the district court did confuse the relationship between due process and equal protection when it stated that "*Windsor* does not change the Supreme Court's jurisprudence on Fourteenth Amendment substantive due process because *Windsor* is a Fifth Amendment equal protection, and not a due process, case." *Flanigan's Enters., Inc. v. City of Sandy Springs*, No. 1:13-cv-03573-HLM, slip op. at 47 (N.D. Ga. Oct. 20, 2014).  Constitutional rights are not clause-specific.  The rights secured under the promise of equal protection "may be instructive as to the meaning and reach" of due process, and vice versa; "[i]n any particular case one Clause may be thought to capture the essence of the right in a more accurate and comprehensive way, even as the two Clauses may converge in the identification and definition of the right." *Obergefell*, 135 S. Ct. at 2603; *accord id.* at 2603–04; *Lawrence*, 539 U.S. at 575, 123 S. Ct. at 2482.  Consequently, though the *Windsor* Court concluded that the relevant provision of DOMA violated the equal protection component of the Fifth Amendment's Due Process Clause, the constitutional liberty interest identified was not limited to that holding, and its effects on our jurisprudence are not confined to analyses under the Fifth Amendment. *See Windsor*, 133 S. Ct. at 2695.

[9] The Appellants also cite decisions from our sister circuits holding that *Lawrence* recognized a substantive right to private, consensual sexual intimacy. *See Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 744 (5th Cir. 2008) (describing the right articulated in *Lawrence* as a "right to engage in consensual intimate conduct in the home free from government intrusion"); *see also Latta v. Otter*, 771 F.3d 456, 466 (9th Cir. 2014) (describing *Lawrence* as "recognizing a due process right to engage in intimate conduct"); *Cook v. Gates*, 528 F.3d 42, 55 (1st Cir. 2008)

Additionally, the Appellants contend, *Williams IV* cannot stand in light of the Supreme Court's new instruction on how to define and analyze privacy-based rights. In *Obergefell*, the Court explained that a refined *Glucksberg* analysis applies to define privacy-based rights because *Glucksberg*'s requirement that rights "be defined in a most circumscribed manner" was appropriate for the context in which that test arose but was "inconsistent with the approach th[e] Court ha[d] used in discussing other fundamental rights, including marriage and intimacy." *See Obergefell*, 135 S. Ct. at 2602; *cf. id.* at 2620–21 (Roberts, C.J., dissenting). Those asserted rights that reflect "personal choices central to individual dignity and autonomy, including intimate choices that define personal identity and beliefs"— privacy-based rights—need not be described "in a most circumscribed manner." *See id.* at 2597, 2602 (majority opinion). Accordingly, the Appellants conclude, the remainder of *Williams IV*—in which we defined the asserted interest in the narrow, circumscribed manner *Glucksberg* then required, *see Williams IV*, 378 F.3d at 1242—is no longer good law because the analysis upon which it relied is in conflict with the Supreme Court's instruction in *Obergefell*.

In sum, the Appellants would have us conclude today that *Windsor*'s clarification of *Lawrence* and *Obergefell*'s adjustment of *Glucksberg* effected

(stating that "*Lawrence* recognized a protected liberty interest for adults to engage in consensual sexual intimacy in the home").

9

substantive changes in constitutional law that undermine *Williams IV* to the point of abrogation, such that we are free to decide this appeal without *Williams IV* as binding precedent.

Although we are persuaded that *Windsor* and *Obergefell* cast serious doubt on *Williams IV*, we are unable to say that they undermine our prior decision to the point of abrogation.  *See In re Lambrix*, 776 F.3d at 794.  We did not review *Williams IV* as an en banc court at the time it was decided, *see* 122 F. App'x 988 (11th Cir. 2004) (mem.); the Supreme Court denied the petition for writ of certiorari, *see* 543 U.S. 1152, 125 S. Ct. 1335 (2005) (mem.); and the Court has not expressly held in a subsequent decision that there is a right to engage in acts of private, consensual sexual intimacy, within which would fall a right to buy, sell, and use sexual devices, *see United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008) ("While an intervening decision of the Supreme Court can overrule the decision of a prior panel of our court, the Supreme Court decision must be clearly on point." (internal quotation marks omitted)).

IV

Therefore, unless and until our holding in *Williams IV* is overruled en banc, or by the Supreme Court, we are bound to follow it.  Although we are sympathetic to the Appellants' Fourteenth Amendment Due Process claim, we are constrained by our prior precedent in *Williams IV*, and we are obligated to follow it "even

though convinced it is wrong." *See United States v. Steele*, 147 F.3d 1316, 1318 (11th Cir. 1998).[10]  The Appellants are free to petition the court to reconsider our decision en banc, and we encourage them to do so.

For the reasons stated, we affirm the decision of the district court. [11]

**AFFIRMED.**

---

[10] With respect to Intervenor Henry's First Amendment claims, we agree with the district court that his art simply would not be deemed "designed or marketed as useful primarily for the stimulation of human genital organs." *See Flanigan's Enters.*, No. 1:13-cv-03573-HLM, slip op. at 23–24.  Thus, the Ordinance does not affect the creation or sale of Henry's art, and Henry failed to state a claim that the Ordinance violates his constitutional rights.

[11] The district court committed no reversible error as to Inserection's First Amendment commercial speech claim, Inserection's vagueness challenge, or the Intervenors' Fourteenth Amendment Equal Protection Clause claim.

11

## **APPENDIX**

*The Ordinance reads as follows*:

(a)  A person commits the offense of distributing obscene material when the following occurs:

(1)  He sells, rents, or leases to any person any obscene material of any description, knowing the obscene nature thereof, or offers to do so, or possesses such material with the intent to do so, provided that the word "knowing," as used in this section, shall be deemed to be either actual or constructive knowledge of the obscene contents of the subject matter.

(2)  A person has constructive knowledge of the obscene contents if he has knowledge of facts which would put a reasonable and prudent person on notice as to the suspect nature of the material.

(3)  The character and reputation for the individual charged with an offense under this law, and the character and reputation of the business establishment involved may be placed in evidence by the defendant on the question of intent to violate this law.  Undeveloped photographs, molds, printing plats, and the like shall be deemed obscene notwithstanding that processing or other acts may be required to make the obscenity patent or to disseminate it.

(b)  Material is obscene if:

(1)  To the average person, applying contemporary community standards, taken as a whole, it predominantly appeals to the prurient interest, that is, a shameful or morbid interest in nudity, sex, or excretion;

(2)  The material taken as a whole lacks serious literary, artistic, political, or scientific value; and

12

(3) The material depicts or describes, in a patently offensive way, sexual conduct specifically defined as follows:

    a. Acts of sexual intercourse, heterosexual or homosexual, normal or perverted, actual or simulated;

    b. Acts of masturbation;

    c. Acts involving excretory functions or lewd exhibition of the genitals;

    d. Acts of bestiality or the fondling of sex organs of animals; or

    e. Sexual acts of flagellation, torture, or other violence indicating a sadomasochistic sexual relationship.

(c) Any device designed or marketed as useful primarily for the stimulation of human genital organs is obscene material under this section. However, nothing in this subsection shall be construed to include a device primarily intended to prevent pregnancy or the spread of sexually transmitted diseases.

(d) It is an affirmative defense under this section that selling, renting, or leasing the material was done for a bona fide medical, scientific, educational, legislative, judicial, or law enforcement purpose.

(e) A person who commits the offense of distributing obscene material shall be guilty of a violation of this Code.

Sandy Springs, Ga., Code of Ordinances ch. 38, § 38-120.

13