ROSENBAUM, Circuit Judge,
concurring in part and dissenting in part:
A woman should be a “woman.” She should wear dresses, be subservient to men, and be sexually attracted to only men. If she doesn’t conform to this view of what a woman should be, an employer has every right to fire her.
That was the law in 1963 — before Congress enacted Title VII of the Civil Rights Act of 1964. But that is not the law now. And the rule that Title VII precludes discrimination oh the basis of every stereotype of what a woman supposedly should be — including each of those stated above— has existed since the Supreme Court issued Price Waterhouse v. Hopkins, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), superseded in part by The Civil Rights Act of 1991, Tit. I, § 107(a), 105 Stat. 1075 (codified at 42 U.S.C. § 2000e-2(m)), 28 years ago.
Yet even today the panel ignores this clear mandate. To justify its position, the panel invokes 38-year-old precedent — issued ten years before Price Waterhouse necessarily abrogated it — and calls it binding precedent that ties our hands. I respectfully disagree.
Plain and simple, when a woman alleges, as Evans has-, that she has been discriminated against because she is a lesbian, she necessarily alleges that she has been discriminated against because she failed to conform to the employer’s image of what women should be — specifically, that women should be sexually attracted to men only. And it is utter fiction to suggest that she was not discriminated against for failing to comport with her employer’s stereotyped view of women. That is discrimination “because of ... sex,” 42 U.S.C. § 2000e-2(a)(1), and it clearly violates Title VII under Price Waterhouse.
So I dissent from Part IV of the panel’s opinion. On remand, Evans should be allowed to amend her complaint to state such a claim.
*1262 I.
In 1989 Price Waterhouse rocked the world of Title VII litigation. Before Price Waterhouse, the Supreme Court had recognized only one type of discrimination rooted in stereotyping that Title VII prohibits: discrimination based on the employer’s assumption that, merely by virtue of membership in a protected group, the plaintiff possesses an attribute or will act against the employer’s desire, in conformity with a supposed stereotypical characteristic of the group.
So, for example, in the pre-Price Water-house days, the Supreme Court held that the employers’ practices in Phillips v. Martin Marietta Corp., 400 U.S. 542, 91 S.Ct. 496, 27 L.Ed.2d 613 (1971), and Los Angeles Department of Water & Power v. Manhart, 435 U.S. 702, 98 S.Ct. 1370, 55 L.Ed.2d 657 (1978), violated Title VII.[6] In Phillips, the employer hired men with young children but not women with young children, based on the employer’s gender-based stereotype that women with young children — unlike men with young children — would be incapable of balancing their “family obligations” -with their work obligations. See 400 U.S. at 544, 91 S.Ct. 496. Similarly, in Manhart, the employer had a policy that required women to contribute a greater percentage of their salary to a pension fund than men had to, based on the statistic that, as a general matter, women lived longer than men. See 435 U.S. at 705, 98 S.Ct. 1370.
In these cases, the employer violated Title VII by ascribing certain characteristics to individual women — without consid-. ering whether any individual woman actually possessed the characteristics — based on the employer’s stereotyping of women as a group. So the employer discriminated because it assumed that all members of the protected group would conform to an undesired characteristic of the employer’s stereotyped perception of the group. At least one commentator has referred to this view of Title VII as prohibiting “aserip-tive” stereotyping. Zachary R. Herz, Price’s Progress: Sex Stereotyping and Its Potential for Antidiscrimination Law, 124 Yale L.J. 396, 405 (2014).
But Price Waterhouse substantially broadened the scope of actionable discriminatory stereotyping under Title VII. In that case, the Supreme Court for the first time recognized that discrimination because of an individual plaintiffs failure to conform to the discriminator’s desired and stereotyped perception of how members of the individual’s protected group should be or act — essentially the mirror image of ascriptive stereotyping — violated Title VII. This kind of stereotyping has been called “prescriptive” stereotyping, presumably because discrimination occurs on the basis that an employee does not satisfy an employer’s stereotyped prescription of what the employee of that protected group should be or how the employee should act. Herz, supra, at 406-07.
To understand why Price Waterhouse was so revolutionary, we need to consider the facts of that case. The accounting firm Price Waterhouse denied partnership to Ann Hopkins, a female senior manager, because, in the eyes of her employer, she had qualities that defied stereotypes of how women should look and act. Among other criticisms, Price Waterhouse employees described Hopkins as “abrasive[,]” “brusque[,]” and “macho”; they also complained that she “overcompensated for being a woman” and that she should have “walk[ed] more femininely, talk[ed] more femininely, dress[ed] more femininely, *1263 w[orn] make-up, ha[d] her hair styled, and w[orn] jewelry.” Price Waterhouse, 490 U.S. at 234-35, 109 S.Ct. 1775 (alterations added).
Hopkins’s claim could not have qualified for relief under the ascriptive-stereotyping theory that prevailed before Price Water-house was decided: Price Waterhouse had not declined to make Hopkins a partner because it assumed that Hopkins would act in conformance with a stereotyped “feminine” manner. Just the opposite: Price Wa-terhouse had passed over Hopkins for partner because it insisted that she should act in a stereotyped “feminine” manner, and she did not.
Despite the fact that Price Waterhouse had not ascriptively stereotyped Hopkins, the Supreme Court found that Price Wa-terhouse’s actions violated Title VII. Describing Price Waterhouse’s employees’ comments as “show[ing] sex stereotyping at work,” the Supreme Court held that Title VII prohibited an employer from “evaluating] employees by assuming or insisting that they matched the stereotype associated with their group.” Id. at 251, 109 S.Ct. 1775. The second part of this statement — “or insisting that [employees] matched the stereotype associated with their group” — Opened a whole new avenue for Title VII claims by substantially expanding Title VIPs previously understood reach of precluding discrimination based on only the first half of the statement— “assuming ... that [employees] matched the stereotype associated with their group.”
Applying this broader understanding, the Supreme Court concluded, “In the specific context of sex stereotyping, an employer who acts on the basis of a belief that a woman cannot be aggressive, or that she must not be, has acted on the basis of gender.” Id. at 250, 109 S.Ct. 1775 (emphasis added). Because Price Waterhouse had allegedly discriminated against Hopkins for being, in its view, as a woman “must not be,” the Court determined that Price Waterhouse’s conduct fell within the bounds of Title VII.
Nor did Price Waterhouse leave any doubt about its scope. In its holding, the Court emphasized that, “[i]n forbidding employers to discriminate against individuals because of their sex, Congress intended to strike at the entire spectrum of disparate treatment of men and women resulting from sex stereotypes.” Id. at 251, 109 S.Ct. 1775 (quoting Manhart, 435 U.S. at 707 n.13, 98 S.Ct. 1370 (quoting Sprogis v. United Air Lines, Inc., 444 F.2d 1194, 1198 (7th Cir. 1971))) (emphasis added). The Supreme Court’s message was plain: regardless of the kind of prescriptive stereotype of wqmen that a particular woman failed to satisfy, no employer — and no court — could hold that against her.
We in the Eleventh Circuit heard the Supreme Court’s message loud and clear. In Glenn v. Brumby, 663 F.3d 1312 (11th Cir. 2011), the employer fired Glenn, a transgender woman, because the employer learned that Glenn intended to proceed with gender transition. Id. at 1313, 1320-21. In fact, the employer testified that he terminated Glenn’s employment “based on ‘the sheer fact of. the transition.’ ” Id. at 1320-21.
We relied on Price Waterhouse’s reasoning to find that the employer’s testimony “provide[d] ample direct evidence ... that [the employer] acted on the basis of Glenn’s gender non-conformity.” Id. at 1321. For this reason, we concluded that the employer had violated Title VII.[7] Id. at *1264 1321. So we applied prescriptive-stereotyping theory to hold that discrimination against a transgender employee merely because the employee fails to conform to the employer’s view of what a member of the employee’s birth-assigned sex should be violates Title VII.
We reached this conclusion despite noting that before Price Waterhouse, “several courts” had determined that Title VII offered no relief to transgender victims of sex discrimination. Id. at 1318 n.5. These pr e-Price Waterhouse opinions had reasoned that discrimination against a transgender or transsexual person occurred “not because she is female, but because she is transsexual.” Id. (quoting Ulane v. E. Airlines, Inc., 742 F.2d 1081, 1087 (7th Cir. 1984)). That is the same position that the panel and Judge William Pryor’s concurrence take today: by their reasoning, discrimination against a lesbian happens not because she is a woman, but because she is a lesbian, as though being sexually attracted to men only is somehow divorced from a prescriptive stereotype of women.
But that is precisely the reasoning that we — including Judge Pryor — rejected in Glenn. The pr e-Price Waterhouse opinions that we concluded Price Waterhouse had abrogated applied only ascriptive-stereo-typing theory. They found that the employer had not discriminated against the transsexual or transgender employee in violation of Title VII because the employer had not assumed that the employee would conform to what the employer viewed as an undesired characteristic of the employee’s birth-assigned gender.
These courts did not consider prescriptive-stereotyping theory, so they failed to ask whether the employer discriminated against the transgender or transsexual employee because the employee failed to meet the employer’s stereotype of what a person of the employee’s birth-assigned gender should be. As a result, these courts did not inquire into Title VII’s full scope. For this reason, we wholly dismissed the holdings of these other courts’ opinions, concluding in the strongest of terms that Price Waterhouse had “eviscerated” them. Id. (quoting Smith v. City of Salem, 378 F.3d 566, 573 (6th Cir. 2004)) (quotation marks omitted).
Price Waterhouse and Glenn likewise demand the conclusion that discrimination because an employee is gay violates Title VII’s proscription on discrimination “because of ... sex.” By definition, a gay employee is sexually attracted to members of her own sex. See Gay, The American Heritage Dictionary (5th ed. 2011) (“Of, relating to, or having a sexual orientation to persons of the same sex.”). So when an employer discriminates against an employee solely because she is a lesbian, the employer acts against the employee only because she is sexually attracted to women, instead of being attracted to only men, like the employer prescriptively believes women should be. This is no different than when an employer discriminates against an employee because she is an aggressive or “macho” woman or solely because she is a transgender woman. In all cases, the employer discriminates against the employee because she does not conform to the employer’s prescriptive stereotype of what a person of that birth-assigned gender should be.[8] And so the employer discrimi *1265 nates against the employee “because of ... sex.”[9] 42 U.S.C. § 2000e-2(a)(1).
II.
Despite the fact that my colleague Judge William Pryor joined in all aspects of the Glenn opinion — including its discussion of why Price Waterhouse abrogated other courts’ conclusions that Title VII does not protect transgender people from discrimination- — today his concurrence takes a position at war with Glenn-, it asserts that an employer who discriminates against a woman employee solely because she is a lesbian and therefore fails to conform to the employer’s prescriptive stereotype of what a woman should be does not violate 'Title VII’s ban on sex-based prescriptive stereotyping.
To justify its contradictory conclusion, Judge Pryor’s concurrence attempts to distinguish Glenn by ignoring its facts. To be sure, as the concurrence emphasizes, see W. Pryor Op. at 1259-60, before Glenn’s employer ended her employment, he disciplined her for dressing as a woman when she worked for him.
But the concurrence conveniently overlooks the fact that the employer did not fire Glenn for that. Rather, Glenn’s employer fired Glenn before her transition “because ‘Glenn’s intended gender transition was inappropriate....’” Glenn, 663 F.3d at 1314 (emphasis added). He readily admitted that he terminated her “based on ‘the sheer fact of the transition’ ” that she had not yet undertaken but had expressed an intent to undertake.[10] Glenn, 663 F.3d at 1314, 1320-21 (emphasis). In other words, he fired her solely for being transsexual — that is, for failing to conform to her employer’s view of what a birth-assigned male should be. We said that was enough for Glenn to state a Title VII claim for discrimination based on her termination. Id. at 1321.
And discrimination against an employee solely because she fails to conform to the employer’s view that a woman should be sexually attracted to men only is no different than discrimination against a transsex *1266 ual because she fails to conform to the employer’s view that a birth-assigned male should have male anatomy. In both cases, the employer discriminates because the employee does not comport with the employer’s vision of what a member of that particular gender should .be. It’s just as simple as that.
To avoid this obvious conclusion, the concurrence recharacterizes the discrimination that a lesbian experiences when her employer discriminates against her for failure to conform to the employer’s view that women should not be sexually attracted to women; the concurrence says that this is discrimination based on sexual orientation, and sexual orientation is not a protected class under Title VII. See Pryor Op. at 1258, 1261. But the fact that such discrimination may be alternatively characterized does not make the employer’s discrimination any less based on- the employee’s failure to conform to the employer’s prescriptive gender stereotype. Nor does it make the discrimination any less actionable under Price Waterhouse’s gender nonconformity theory.
If it did, Glenn’s termination claim would have been dismissed. But instead, we correctly found that Title VII did not allow Glenn’s employer to fire her for failing to conform to the employer’s prescriptive stereotype of what a birth-assigned male should be because doing so constituted discrimination “because of ... sex.” Our conclusion did not change the fact that Glenn is transsexual, and Title VII does not protect transsexuals as a class. Rather, our conclusion was in spite of those facts. See Glenn, 663 F.3d at 1318 n.5 (recognizing that pre-Price Waterhouse decisions had concluded that a claim based on discrimination against a transsexual woman for being transsexual was not actionable under Title VII because it stated a claim of discrimination “not because she is female, but because she is transsexual,” and transsexuals are not a protected class under Title VII) (citations and quotation marks omitted).
As the concurrence itself notes, “[U]n-der Title VII, we ask only whether the individual experienced discrimination for deviating from . a gender stereotype.” Pryor Op. at 1258. When the answer is “yes,” the plaintiff has stated a claim, and the fact that Title VII does not protect homosexuals as a class is entirely irrelevant. The concurrence offers no answer to this hole in its reasoning.
Instead, -it changes the subject, pointing to an artificial line between discrimination because an employee has not behaved in a way that the employer thinks a person of that gender should, on the one hand, and discrimination because an employee is not the way that the employer thinks a person of that gender should be, on the other. Pryor Op. at 1259. As a matter of logic, no basis exists for this arbitrary line. Even a circuit that has declined to apply gender-stereotyping to a plaintiffs claim that he was discriminated against because he is gay has essentially admitted as much: in Vickers v. Fairfield Medical Center, 453 F.3d 757, 762 (6th Cir. 2006), the Sixth Circuit expressed concern that recognizing the Title VII claim of a man who asserted that he was harassed and discriminated against because his co-workers perceived him to be gay would allow “any discrimination based on sexual orientation [to] be actionable under a [prescriptive] sex stereotyping theory ..., as all homosexuals, by definition, fail to conform to traditional gender norms in their sexual practices.” 453 F.3d at 764 (emphasis added).
If an employer discriminates against a lesbian solely because she fails to conform to the employer’s view that women should be sexually attracted to only men, the employer clearly discriminates against that *1267 woman for failure to conform to gender stereotypes as much as if the employer discriminates against a woman because she engages in the behavior of dating women.
But in the concurrence’s world, only the person who acts on her feelings enjoys the protection of Title VII. This makes no sense from a practical, textual, or doctrinal point of view.
As a practical matter, this construction protects women who act or dress in ways that the employer perceives as gay, because that behavior fails to conform to the employer’s view of how a woman should act. But it allows employers to freely fire women that the employer perceives to be lesbians — as long as the employer is smart enough to say only that it fired the employee because it thought that the employee was a lesbian, without identifying the basis for the employer’s conclusion that she was a lesbian. It cannot possibly be the case that a lesbian who is private about her sexuality — or even a heterosexual woman who is mistakenly perceived by her employer to be a lesbian — can be discriminated against by the employer because she does not comport with the employer’s view of what a woman should be, while the outwardly lesbian plaintiff enjoys Title VII protection.[11]
The concurrence’s distinction between behavior and being also enjoys no. textual support. Title VII prohibits discrimination “because of ... sex.” 42 U.S.C. § 2000e-2(a)(1). It doesn’t distinguish between discrimination “because of ... sex,” based on behaving “like a woman,” and discrimination “because of ... sex” based on being a woman. To take an analogous example, by prohibiting discrimination “because of ... religion,” Title VII does not allow an employer to discriminate against a non-practicing Catholic for simply being a Catholic any more than it allows an employer to discriminate against a Catholic for coming to work on Ash Wednesday with a cross of ashes on her forehead. The Title VII text that prohibits discrimination against a Catholic simply for being a Catholic is exactly the same as the Title VII text that prohibits discrimination against women, except that it refers to “religion” instead of “sex.” If that language does not permit an employer to discriminate against a Catholic for being Catholic, it does not allow an employer to discriminate against a woman for being a woman, regardless of whether *1268 she behaves the way her employer thinks a woman should.
The Supreme Court has likewise not found a distinction between behavior and being in applying Title VII’s proscription of discrimination “because of ... sex.” In the ascriptive-stereotyping case Manhart, which involved the policy charging women more than men for pension benefits, living longer was a matter of being rather than behaving. But the Supreme Court found that , the policy nonetheless violated Title VII, despite the fact that the plaintiffs were not discriminated against for their behavior. And that’s because Title VII’s broad language “strike[s] at the entire spectrum of disparate treatment of men and women resulting from sex stereotypes.” Price Waterhouse, 490 U.S. at 251, 109 S.Ct. 1775 (emphasis added) (citations and quotation marks omitted).
Finally, as a doctrinal matter, neither the concurrence nor any other source, to my knowledge, has satisfactorily explained how a woman who behaves in a manner that is inconsistent with the employer’s vision of how a woman should act is discriminated against any more on the basis of her gender than a woman who is discriminated against because, by being sexually attracted to women, she fails to conform to the employer’s view of what a woman should be. The concurrence’s distinction between “behavior” and “being” is a construct that is both illusory in its defiance of logic and artificial in its lack of a legal basis.
Perhaps because the dichotomy that the concurrence advocates cannot find logical support, the concurrence constrictively reads Price Waterhouse and reinvents Glenn to support its theory. See Pryor Op. at 1259-61. While the concurrence correctly notes that Price Waterhouse did not promote Hopkins because she acted in a manner that did not conform to its view of women, nothing in Price Waterhouse purports to limit its reasoning to only those cases involving discrimination on the basis of behavior (as opposed to interests or attractions) that does not comport with the employer’s prescriptive gender stereotype.[12] True, Price Waterhouse discriminated against Hopkins based on characteristics Hopkins demonstrated in the workplace that were inconsistent with Price Waterhouse’s prescriptive stereotype of women. But that is simply how the facts in Price Waterhouse arose. Nothing in Price Waterhouse’s reasoning or construction of Title VII justifies limiting Price Waterhouse’s holding to cases involving discrimination against women for their behavior, as opposed to discrimination against women for being women or for their interests and attractions. Nor, for the reasons I have discussed, does it make sense to do so. The concurrence likewise points to nothing in Price Water-house that so limits its reasoning.
*1269 As for Glenn, I have already explained how the concurrence tries to use this case as a do-over of that one. But Glenn says what it says — namely, that discrimination solely because a birth-assigned male failed to conform to the employer’s prescriptive stereotype for what men should be by being transsexual constitutes gender-based discrimination in violation of Title VII. Whether the concurrence likes it or not— and whether the concurrence recognizes it or not — we are . bound by Glenn, and Glenn cannot be reconciled with our holding today.
So the concurrence tries a different tack. It argues essentially that it’s for lesbian employees’ own good that we should not recognize that Title VII prohibits discrimination against lesbians on the basis that they fail to conform to the employer’s view of what a woman should be. See W. Pryor Op. at 1258. In the concurrence’s view, we shouldn’t apply Price Waterhouse’s prescriptive-stereotyping theory to preclude discrimination against a lesbian for failure to comply with the employer’s ideal view of women because doing so somehow “rel[ies] on false stereotypes of gay individuals.” Id.
Judge Pryor’s concurrence then embarks on an irrelevant journey through some of the different ways in which a gay person may express — or suppress — her sexual attraction. See id. at 1251. It asserts, for example, that “[s]ome gay individuals adopt the gay ‘social identity’ but experience a variety of sexual desires.... [S]ome gay individuals may choose not to marry or date at all or may choose a celibate lifestyle. And other gay individuals choose to enter mixed-orientation marriages.” Id. (citations omitted).
The concurrence’s argument seems to fundamentally misunderstand what it means to be a lesbian. Lesbians are women who are sexually attracted to women. That’s not a stereotype; it’s a definition.
And if an employer discriminates against a woman for the reason that the employer believes the employee is sexually attracted to women, how the employee expresses — or suppresses — her feelings of sexual attraction is irrelevant to the fact that the employer has discriminated against the woman for failing to conform to the employer’s stereotype that women should be sexually attracted to only men.[13] That discrimination violates Title VII’s proscription against discrimination “because of ... sex,” under Price Waterhouse and Glenn, just as much as if the discrimination were for the failure of a woman to be demure or a birth-assigned male to refrain from identifying as a woman.[14]
*1270 The panel opinion’s reasons for rejecting this conclusion fare no better than Judge Pryor’s concurrence’s. The panel opinion makes two arguments in defense of its position. First, the panel opinion asserts that, under our prior-panel-precedent rule, we have no choice but to hold that discrimination against a woman for being a lesbian and therefore failing to conform to her employer’s stereotype of what a woman should be does not violate Title VII. And second, the panel opinion contends that its holding is correct because “other circuits have held that sexual orientation discrimination is not actionable under Title VII.” Maj. Op. at 1256. Neither argument can withstand scrutiny.
Beginning with the panel opinion’s contention that our precedent dictates our result today, our prior-panel-precedent rule states that we must follow a prior panel’s decision, even if we disagree with it — unless a later en banc or Supreme Court opinion overrules or undermines the prior precedent to the point of abrogation. Chambers v. Thompson, 150 F.3d 1324, 1326 (11th Cir. 1998). We have said that where a Supreme Court opinion “directly conflicts] with” a prior precedent, the pri- or panel precedent has been abrogated. United States v. Kaley, 579 F.3d 1246, 1255 (11th Cir. 2009). Contrary to the panel opinion’s position in Evans’s case, the exception governs here.
The panel opinion hangs its hat on Blum v. Gulf Oil Corp., 597 F.2d 936 (5th Cir. 1979), a case our predecessor court decided 38 years ago — ten years before the Supreme Court recognized prescriptive-stereotyping theory in Price Waterhouse. In Blum, we said,'“Discharge for homosexuality is not prohibited by Title VII.... ” Id. at 938. This ruling allows an employer to discriminate against a woman solely because she is a lesbian and does not fulfill the employer’s version of what a woman should be.
But that result “directly conflict[s] with” Price Waterhouse’s, holding that Title VII prohibits an employer from discriminating against its employee on the basis that she fails to conform to the employer’s view of what a woman should be. Indeed, Price Waterhouse “eviscerate[s]” Blum’s holding no less than we found it did other courts’ pre-Price Waterhouse holdings that employers did not violate Title VII when they discriminated against their transgender employees simply because the employees failed to conform to the employers’ view of what a member of the employee’s birth-assigned sex should be. See Glenn, 663 F.3d at 1318 n.5 (quoting Smith, 378 F.3d at 573) (quotation marks omitted).
Simply put, Price Waterhouse requires us to apply the rule that “[a]n individual cannot be punished because of his or her perceived gender-nonconformity.” See id. at 1319. Since continued application of Blum would allow a woman to be punished precisely because of her perceived gender non-conformity — in this case, sexual attraction to other women — Price Waterhouse undermines these cases to the point of abrogation. See Kaley, 579 F.3d at 1255; Chambers, 150 F.3d at 1326.
And even if it didn’t — a position that is not supported by the reality of what Blum’s holding does — Blum’s failure to account for prescriptive-stereotyping theory *1271 in its “analysis”[15] demands reexamination after Price Waterhouse. For this reason, since the panel concludes that Blum continues to bind us even after Price Water-house, we should rehear this case en banc on this issue. Cf., e.g., Flanigan’s Enters., Inc. of Ga. v. City of Sandy Springs, Ga., 831 F.3d 1342, 1348 (11th Cir. 2016) (encouraging appellants to “petition the court to reconsider our decision en banc” where prior precedent appeared to conflict with recent Supreme Court law).
Turning to the panel opinion’s second basis for its holding, the opinion wrongly finds comfort in other circuits’ rulings on this issue. To be sure, we should carefully consider our sister circuits’ opinions and the bases for them, for our colleagues are a thoughtful and learned bunch. But to put it colloquially, the mere fact that our friends may jump off a bridge does not, in and of itself, make it a good idea for us to do so.
Our sister circuits’ decisions are not correct. Not one of the justifications they offer for concluding that Title VII does not protect a man or woman from discrimination because he is gay or she is a lesbian holds up to examination.
I begin by noting that several circuits have opined that discrimination against a man or woman because he or she is gay does not fall into any of the following categories of discrimination: discrimination based on sexually charged interactions, on ascriptive stereotyping, or on differences in treatment between men and women. But even if that is accurate,[16] discrimina-, tion doesn’t have to comport with one of these theories in order to qualify under Title VII as discrimination “because of ... sex.”
Under Price Waterhouse, when an employer discriminates because of an employee’s failure to conform to the employer’s view of what a member of that sex should be, that employer has discriminated, in violation of Title VII, “because of ... sex.” See Price Waterhouse, 490 U.S. at 251, 109 S.Ct. 1775. That is all that is required to establish a claim for discrimination under Title VII.
*1272 Nor does it matter to the viability of an employee’s claim that, as some courts have phrased it, “[s]exual orientation is not a classification that is protected under Title VII.” See, e.g., Hamner v. St. Vincent Hosp. & Health Care Ctr., Inc., 224 F.3d 701, 707 (7th Cir. 2000); see also Higgins v. New Balance Athletic Shoe, Inc., 194 F.3d 252, 259 (1st Cir. 1999); Simonton v. Runyon, 232 F.3d 33, 35 (2d Cir. 2000); Bibby v. Phila. Coca Cola Bottling Co., 260 F.3d 257, 261 (3d Cir. 2001); Wrightson v. Pizza Hut of Am., Inc., 99 F.3d 138, 143 (4th Cir. 1996); Vickers, 453 F.3d at 762. The concurrence relies on this rationale as well; as I have already explained, that reliance is grossly misplaced.
Some of our sister circuits, like the concurrence here, have also noted that “Congress has repeatedly rejected legislation that would have extended Title VII to cover sexual orientation.” Bibby, 260 F.3d at 261. But the Supreme Court has emphasized that “it is ultimately the provisions of our laws rather than the principal concerns of our legislators by which we are governed. Title VII prohibits ‘discrimination] ... because of ... sex’ in the ‘terms’ or ‘conditions’ of employment.” Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 79-80, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998). This necessarily “extend[s] to [discrimination ‘because of ... sex’] of any kind that meets the statutory requirements.” Id. at 80, 118 S.Ct. 998. Indeed, the Court in Oncale made clear that we must apply Title VII’s text alone, without regard to what we may divine Congress’s concerns to be. And Price Waterhouse establishes that discrimination based on an employee’s failure to comport with the employer’s view of what a member of the employee’s sex should be is discrimination “because of ... sex” that meets Title VII’s statutory requirements.
It likewise makes no difference to the viability of a Title VII claim whether the employee has “readily demonstra[ted]” in the workplace the characteristic on which the discrimination is based. Vickers, 453 F.3d at 763. This argument is a variation on Judge Pryor’s concurrence’s contention that Title VII and Price Waterhouse somehow prohibit discrimination based on behavior only and not on being, so it fails for the same reasons that the concurrence does.
Finally, the panel opinion cites Rene v. MGM Grand Hotel, Inc., 305 F.3d 1061 (9th Cir. 2002), for the proposition that “an employee’s sexual orientation is irrelevant for purposes of Title VII.” Maj. Op. at 1256 (quotation marks omitted). In the context of Rene’s facts, I agree that the plaintiffs sexual orientation was irrelevant — but only because the plaintiff alleged that he was discriminated against “because of ... sex” under Title VII when he was subjected to “severe, pervasive, and unwelcome ‘physical conduct of a sexual nature’ in the workplace.” Rene, 305 F.3d at 1063.
As I have noted, discrimination that occurs in the form of physical sexual conduct satisfies a category of discrimination “because of ... sex” without consideration of whether it also constitutes discrimination “because of ... sex” under any other theories. But the mere fact that sexual orientation may be irrelevant when a plaintiff alleges discrimination “because of ... sex” under Title VII based on an unwanted-sexual-conduct theory does not mean that it is irrelevant when a plaintiff alleges discrimination “because of ... sex” based on a prescriptive-stereotyping theory.
I am not the first person to conclude that discrimination against an employee because of her sexual orientation is discrimination against an employee “because of ... sex.” In recent years in particular, *1273 numerous district courts, including two in our Circuit, have also reached this conclusion. See, e.g., Winstead v. Lafayette Cty. Bd. of Cty. Comm’rs, 197 F.Supp.3d 1334, 1341-47 (N.D. Fla.2016); Isaacs v. Felder Servs., LLC, 143 F.Supp.3d 1190, 1193-94 (M.D. Ala. 2015); Videckis v. Pepperdine Univ., 150 F.Supp.3d 1151, 1159-61 (C.D. Cal. 2015); Deneffe v. SkyWest, Inc., No. 14-cv-00348-MEH, 2015 WL 2265373, at *5-6 (D. Colo. May 11, 2015); Terveer v. Billington, 34 F.Supp.3d 100, 116 (D.D.C. 2014); Boutillier v. Hartford Pub. Schs., No. 3:13CV1303 WWE, 2014 WL 4794527, at *2 (D. Conn. Sept. 25, 2014); Heller v. Columbia Edgewater Country Club, 195 F.Supp.2d 1212, 1224 (D. Or. 2002); see also Christiansen v. Omnicom Grp., Inc., 167 F.Supp.3d 598, 618-22 (S.D.N.Y. 2016) (adhering to circuit precedent foreclosing a sexual-orientation claim under Title VII but explaining why that precedent rests on shaky ground).
And the U.S. Equal Employment Opportunity Commission has taken the same position as these district courts, both in a recent administrative decision, see Baldwin v. Foxx, EEOC Appeal No. 0120133080, 2015 WL 4397641 (July 15, 2015), and in this litigation in the capacity as an amicus curiae. It is time that we as a court recognized that Title VII prohibits discrimination based on an employee’s sexual orientation since that is discrimination “because of ... sex.”
III.
Presidential-Medal-of-Freedom recipient Mario Thomas has expressed the sentiment that “[i]n this land, every girl grows to be her own woman.”[17] Title VII codifies the promise that when she does, she will not be discriminated against on the job, regardless of whether she conforms to what her employer thinks a woman should be. Because the panel does not read Title VII to fulfill that promise, I respectfully dissent.

. In Phillips, the Court concluded that the policy violated Title VII to the extent that it did not fit the exception for bona fide occupational qualifications.

. Although Glenn was decided under the Equal Protection Clause, Title VII's standard is easier to satisfy than the Equal Protection Clause's standard. See Glenn, 663 F.3d at *1264 1321. In Glenn, we also recognized the cross-applicability of principles between Title VII and Equal Protection cases by relying extensively on the rationale of Title VII decisions, particularly Price Waterhouse.

. I do not mean to suggest any judgments about the reasons for why an employer might hold any given prescriptive stereotype. The reasons for it are irrelevant to whether prescriptive stereotyping actually occurs under Title VII. All that matters is that the employer *1265 discriminates against the employee because the woman employee's sexual attraction to women fails to comport with the employer’s view of what a woman should be. Cf. Manhart, 435 U.S. at 707, 98 S.Ct. 1370 (finding that discrimination based on even "unquestionably true” ascriptive stereotypes constitutes discrimination against an "individual” "because of ... sex” and therefore violates Title VII).

. This type of discrimination is discrimination "because of ... sex” for another reason as well. When an employer discriminates against a woman because she is sexually attracted to women but does not discriminate against a man because he is sexually attracted to women, the employer treats women and men differently "because of ... sex.”

. Judge Pryor’s concurrence tries valiantly to escape this inconvenient fact, arguing that the employer’s statement that he "fired Glenn because he considered it ‘inappropriate’ for her to appear at work dressed as a woman and that he found it 'unsettling' and 'unnatural' that Glenn would appear wearing women's clothing,” Glenn, 663 F.3d at 1320, demonstrates that Glenn was not fired "solely for being transsexual.” W. Pryor Op. at 1260. This argument is wrong on three counts. First, the opinion in Glenn reflects that Glenn actually wore women's clothing to work only once (on Halloween) before she was fired, and on that occasion, she was asked to leave — she was not terminated — so plainly, Glenn was not fired for actually having worn women’s clothing to work. Second, it is clear that the employer’s statement on which the concurrence relies expressed concern only that Glenn would appear at work as a woman after her transition, but that never occurred since the employer fired her before her transition. Finally, the employer candidly admitted that he fired Glenn "based on ‘the sheer fact of the transition.' ” Glenn, 663 F.3d at 1320-21 (emphasis added).

. The concurrence takes a phrase of this sentence out of context and uses it to mis-characterize this dissent as amounting to nothing more than a disagreement with Congress since Congress did not specifically intend to protect lesbians from discrimination on the basis that they are sexually attracted to women. See W. Pryor Op. at 1261. But, in reality, the concurrence is the one with the disagreement — only it’s a disagreement with the text of Title VII, Supreme Court precedent, our precedent, and even logic. True, my conclusion — that discrimination against a lesbian because she fails to comport with the employer’s view of what a woman should be violates Title VII's ban on discrimination “be- . cause of ... sex” — likely is not what Congress had in mind when it enacted Title VII. But "male-on-male sexual harassment in the workplace was assuredly not the principal evil Congress was concerned with when it enacted Title VII,” Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 79, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998). Yet the Supreme Court found that irrelevant to whether Title VII’s text prohibited it. So the mere fact that we may believe that Congress may not have specifically intended the meaning of what a statute actually says is not a basis for failing to apply the textual language. This dissent relies on the text of Title VII, as well as Supreme Court precedent, .this Court’s opinion in Glenn, and logic, not on some "disagreement” with Congress. Of course, the concurrence is free to ignore my analysis rather than respond to it, but that doesn’t make it go away.

. The concurrence relies on Zachary Herz's legal commentary for the proposition that "current doctrine does not protect on the basis of status alone.” Pryor Op. at 1259. While Herz does note that "the current regime ... protects stereotypically ‘gay’ conduct without protecting LGBT status,” as the concurrence notes, id. at 1259-60 (quoting Herz, supra, at 432), Herz was suggesting, among other things, that Price Waterhouse supports a broader reading than some courts at that time were giving it. See Herz, supra, e.g., at 399 (“a broader application of Price Waterhouse’s view of discrimination has the potential to resolve, or at least to ameliorate, a serious problem in American antidiscrimi-nation law — the inability of traditional Title VII approaches to address the realities of modern workplace bias"). Since Herz's note was published, other cases have recognized the extent of Price Waterhouse's reasoning. See, e.g., Winstead v. Lafayette Cty. Bd. of Cty. Comm’rs, 197 F.Supp.3d 1334, 1341-47 (N.D. Fla. 2016).

. I nevertheless note that even under Judge Pryor’s limited view, discrimination against an employee for "adopting]” what Judge Pryor's concurrence describes as the “gay ‘social identity,' " for marrying or dating someone of the same sex, for choosing not to marry or date at all, or for entering into so-called mixed-orientation marriages, is still discrimination in its own right because the employer holds a prescriptive stereotype that members of a given sex should not act in these ways. Judge Pryor's concurrence may dress up the prescriptive stereotype that the employer applies however he wishes, but all of this discrimination is discrimination because of the employee’s failure to comport with the employer's idealized version of what a member of a given sex should be. So all of it violates Title VII under Price Waterhouse and Glenn.

. The concurrence seems to suggest that I am proposing that merely alleging that an employer has discriminated because an employee is a lesbian somehow suffices to prove the claim. See W. Pryor Op. at 1260 ("Because a claim of gender nonconformity is a behavior-based claim, not a status-based claim, a plaintiff still 'must show that the employer actually relied on her gender in making its decision.' ”). To be clear, that is not what I am saying. Of course, a plaintiff who alleges that her employer discriminated *1270 against her because she failed to conform to the employer’s view that women should be sexually attracted to only men must prove that, in fact, that was a motivating factor in why her employer took adverse employment action against her. She can do so through either direct or circumstantial evidence. But at the pleading stage, all she must do is allege facts that, taken as true, establish that her employer discriminated against her because she did not comport with the employer’s vision of what a woman.should be.

. In Blum, we actually engaged in no discussion or reasoning related to our statement, "Discharge for homosexuality is not prohibited by Title VII....” 597 F.2d at 938. Rather, we simply cited Smith v. Liberty Mutual Insurance Co., 569 F.2d 325, 327 (5th Cir. 1978). In Smith, we characterized the plaintiff as arguing that Title VII precludes discrimination "based on affectional or sexual preference.” Id. at 326. Finding no cause of action for the plaintiff under Title VII, we explained our holding in ascriptive-stereotyping-theory terms: “Here the claim is not that [the plaintiff] was discriminated against because he was a male, but because as a male, he was thought to have those attributes more generally characteristic of females and epitomized in the descriptive 'effeminate.' '' Id. at 327. In other words, we found that Title VII could not assist the plaintiff because his employer did not assume that, since he was a man, he would comport with an undesired stereotype of men. And although the plaintiff presented a prescriptive-stereotyping theory — -that is, the theory that his employer discriminated against him under Title VII by insisting that the plaintiff comply with its view of what a man should be — we rejected it. This is perhaps understandable, since the Supreme Court did not recognize the theory for another eleven years after we issued Smith. But now, 39 years later and 28 years after the Supreme Court issued Price Waterhouse, our continuing refusal to recognize the significance of Price Waterhouse is not.

. As I have noted, see supra at n.4, discrimination against a woman because she is sexually attracted to women can qualify as well as discrimination based on differences in treatment between men and women. When an employer discriminates against a woman because she is sexually attracted to women but does not discriminate against a man because he is sexually attracted to women, the employer treats women and men differently "because of ... sex.”

. Stephen J. Lawrence & Bruce Hart, Free to Be ... You and Me, on Free To Be ... You and Me (Bell Records 1972); see also President Obama Announces the Presidential Medal of Freedom Recipients, The White House, https:// obamawhitehouse.archives.gov/bloK/2014/ll/ 10/president-obama-announces-presidential-medal-freedom-recipients (last visited Feb. 22, 2017). Mario Thomas and Friends created the album Free to Be ... You and Me, a children’s record with multiple songs, skits, stories, and poems, that has been praised for its "potent message of freedom, equality, and personal liberation.” Free to Be ... You and Me at 40, The Paley Center for Media, https://www. paleycenter.org/2014-free-to-be-you-and-me-at-40 (last visited Feb. 19, 2017). After the album went platinum, Thomas created a bestselling book and an award-winning television special of the same name. Id. Much of the album emphasizes the idea that a person should be what she wishes — not be forced to conform to another’s view of her gender. Some of the album’s more famous songs that focus on this notion include “Parents are People,” "William’s Doll,” and "It's Alright to Cry.” Id. In addition to Thomas, Alan Alda, Harry Belafonte, Mel Brooks, Rita Coolidge, Billy DeWolfe, Roberta Flack, Rosey Grier, Michael Jackson, Kris Kristofferson, The New Seekers (who performed, the title track), Tom Smothers, The Voices of East Harlem, and Dionne Warwick appear on the album. Free to Be You and Me, Amazon, https ://www.. amazon.com/Free-Be-You-Marlo-Thomas/dp/ B00005QKQT (last visited Feb. 20, 2017). The White House cited Thomas’s work on Free to Be ... You and Me in its announcement of her Presidential Medal of Freedom.