**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 14a0601n.06

Case No. 13-4196

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Aug 06, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| KIMBERLY LISBOA, et al., | ) | |
| | ) | |
| Plaintiffs-Appellants, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE NORTHERN DISTRICT OF |
| CITY OF CLEVELAND HEIGHTS, et al., | ) | OHIO |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |
| | ) | |

BEFORE: GIBBONS, SUTTON and WHITE, Circuit Judges.

SUTTON, Circuit Judge. Kimberly Lisboa and others owned a nightclub in Cleveland Heights, Ohio. When the club generated noise, fights, and other disturbances in the community, the City sued the owners in state court to stop the nuisance, and the owners sued to defend their actions and to charge the City with acting improperly. The parties eventually entered a consent decree that resolved the two lawsuits, that allowed the club to stay open for a while, and that eventually required the owners to close the club. Not long after signing the consent decree, the club owners filed this § 1983 action alleging due process and equal protection violations surrounding the City's public-nuisance action. The district court granted the City judgment on the pleadings based on claim preclusion. We affirm.

I.

In 2011, Lisboa and others opened a nightclub. MYXX, as they named the club, was popular, perhaps too popular. About a year after the club opened, fights, noise problems, and underage drinking prompted the City of Cleveland Heights to declare the place a public nuisance. The City Council authorized the City Manager and Director of Law to take all appropriate legal action to abate the nuisance. Three weeks later, in the early morning hours, a crowd of drunken partiers poured out of the club onto the street. Calls to the police from unhappy neighbors followed, and many officers were dispatched in response. The City was not happy.

Fed up, the City sued the plaintiffs in Ohio state court, seeking an injunction to end the nuisance once and for all. Lisboa beat the City to the punch, filing for an injunction of her own earlier the same day in a separate action in state court. Among other things, Lisboa claimed that the City enforced its ordinances in a racially discriminatory way and that the nuisance charge was baseless. The parties settled the consolidated actions. They memorialized the settlement in a court-approved consent decree, which allowed Lisboa to keep the club open for a little while longer but eventually required her to close it for good. That, it seemed, was the end of that.

Less than two months later, however, Lisboa filed this § 1983 action in federal court. She raised due process and equal protection claims that largely tracked the factual predicates of her state court claims: insufficient evidence to brand MYXX a nuisance, procedural violations of city law, and discriminatory enforcement targeting the club's predominantly black patrons. Invoking the consent decree, the City moved for judgment on the pleadings based on claim preclusion. The district court agreed. It held that Lisboa's constitutional claims were precluded because she could have, and should have, pursued them in the state litigation.

2

II.

We give fresh review to a district court's grant of judgment on the pleadings under Civil Rule 12(c). *Vickers v. Fairfield Med. Ctr.*, 453 F.3d 757, 761 (6th Cir. 2006). As with review of a Civil Rule 12(b)(6) motion, the question is whether the plaintiff's complaint alleges sufficient facts that state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Vickers*, 453 F.3d at 761.

In federal court, state court judgments receive the same preclusive effect they would receive in the issuing State's courts. 28 U.S.C. § 1738; *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985). That means we look to Ohio's law of claim preclusion (otherwise known as res judicata), which has four elements: "(1) a prior final, valid decision on the merits by a court of competent jurisdiction; (2) a second action involving the same parties, or their privies, as the first; (3) a second action raising claims that were or could have been litigated in the first action; and (4) a second action arising out of the transaction or occurrence that was the subject matter of the previous action." *Hapgood v. City of Warren*, 127 F.3d 490, 493 (6th Cir. 1997); *see also Grava v. Parkman Twp.*, 653 N.E.2d 226, 229 (Ohio 1995). If all four elements are met, claim preclusion bars the later lawsuit.

Lisboa does not dispute that consent judgments satisfy the first element, as well they do. *Horne v. Woolever*, 163 N.E.2d 378, 382 (Ohio 1959); *see also In re Gilbraith*, 512 N.E.2d 956, 959 (Ohio 1987). She does not deny that the parties in both actions overlap. And she does not claim that any obstacle prevented her from raising her federal claims when she filed the first lawsuit.

What separates the parties is the fourth inquiry: Did the second action arise out of the same "transaction or occurrence" as the first? Like the district court, we think it did. Two sets

of claims meet this test if, in the language of the case law, they arise from a "common nucleus of operative facts," *Grava*, 653 N.E.2d at 229 (quotation omitted), or if, in the language of everyday people, they are "logically related," *Rettig Enterprises, Inc. v. Koehler*, 626 N.E.2d 99, 103 (Ohio 1994) (quotation omitted). However phrased, the test is met here. Compare the two actions. In the first one, the parties sued each other over the City's effort to abate the nuisance caused by the fighting, underage drinking, and loud noise—the general disorderly conduct—surrounding MYXX and over the allegedly discriminatory manner in which the City enforced its laws. After the consent decree, Lisboa sued the City under § 1983 for its response to those same disturbances: declaring the club a nuisance in violation of the City's own procedures and racially discriminatory enforcement of its laws. The pattern of disruptive activity behind both suits is the same, and the alleged problem with the City's response is the same. On this record, both sets of claims arise from a shared "occurrence" or "common nucleus of operative facts."

Lisboa persists that the facts relevant to her constitutional claims are sufficiently different from those at issue in the City's case to avoid preclusion. In the prior litigation, she submits, her § 1983 claims would have been permissive, rather than compulsory, counterclaims, and thus she would have had no obligation to bring them then. Her argument, as an initial matter, overlooks the reality that she filed her *own* lawsuit against the City in state court, making the premise of this argument—a distinction between compulsory and permissive counterclaims—beside the point.

Even if we ignore this reality, her argument still falls short. One premise of this argument, to be sure, is correct; yet the other is not. Lisboa is right that permissive counterclaims are not later precluded. But she is wrong to give the § 1983 claims this label. What makes a counterclaim compulsory is *also* what triggers preclusion: that the claim arises

4

from the same "transaction or occurrence." *Id.* at 102. Just so here, as we noted. Nor, contrary to her suggestion, is a perfect overlap of the claims required to meet the test. "That they are not precisely identical, or that the counterclaim embraces additional allegations does not matter." *Id.* at 103 (internal quotation marks and ellipsis omitted); *see also Grava*, 653 N.E.2d at 229 (holding that claims arise from the same transaction even if they "depend on different shadings of the facts," "emphasize different elements of the facts," or trigger "different kinds of relief"). Lisboa identifies no material differences between the two actions. As a result, the claims Lisboa asserts now were compulsory counterclaims that should have been brought earlier. Having opted to settle the first actions (hers and the City's) through a consent judgment and having presumably benefited from the give and take of settlement discussions (including being able to keep the club open for a while longer), Lisboa had no right under Ohio law to sue the City again over the same disputes.

For these reasons, we affirm.