**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

File Name: 17a0401n.06

Case No. 16-4193

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jul 12, 2017
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| KEITH GOODWIN; KEITH HEATING AND COOLING, INCORPORATED, | ) ) ) | |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | |
| SUMMIT COUNTY, OHIO; RUSSELL M. PRY, Executive, County of Summit, Ohio; CHIEF BUILDING OFFICIAL JOHN M. LABRIOLA; SUMMIT COUNTY, OH BUILDING STANDARDS DEPARTMENT; CYNTHIA M. SICH, Former Director of Office of Consumer Affairs; WILLIAM MILLER, Investigator for the Office of Consumer Affairs; SUMMIT COUNTY, OH OFFICE OF CONSUMER AFFAIRS; COUNTY PROSECUTOR SHERRI BEVAN WALSH; SUMMIT COUNTY, OH PROSECUTOR OFFICE, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| Defendants-Appellees. | ) | |

BEFORE: MOORE, GILMAN, and COOK, Circuit Judges.

**COOK, Circuit Judge.** Summit County, Ohio, brought a civil enforcement action in state court against an HVAC company and its owner, prompting them to sue the County and several of its officials in federal district court. After the state court proceedings concluded, the

County moved to dismiss the federal case, and the company and its owner sought leave to amend their original complaint. The district court granted the County's motion to dismiss and denied leave to amend. The company and its owner appeal. We AFFIRM.

## I. Background

Keith Goodwin is the president of Keith Heating and Cooling, Inc., a heating, ventilation, and air-conditioning company headquartered in Summit County, Ohio. In October 2012, the County filed a civil enforcement action against Mr. Goodwin and his company (together, "Goodwin") in state court, alleging violations of municipal ordinances concerning building permits and sales practices. They answered separately in December 2012, and filed a joint amended answer in March 2013. All three of the answers included numerous affirmative defenses, but no counterclaims.

In January 2014, with the state proceedings pending, Goodwin filed a 42 U.S.C. § 1983 action against the County, three County departments, and five County officials in federal court, alleging violations of the Due Process Clause, Equal Protection Clause, and Takings Clause, as well as state law claims for "civil abuse of process" and "vindictive enforcement and vindictive prosecution." Goodwin sought an injunction halting the state court proceedings; a declaration that the County's pertinent ordinances are unconstitutional; and compensatory and punitive damages, costs, and fees.

The County and other defendants moved to dismiss the federal action or, in the alternative, to stay the case pending resolution of the state court proceedings. They argued that the County was the only proper defendant—that the departments may not be sued as separate legal entities because administrative units of local government lack the capacity to be sued, and that the claims against the County officials similarly amounted to suits against the County

because Goodwin sued them in their official capacity only. The district court agreed. In September 2014, it dismissed the County departments and officials, and it stayed the case pending the conclusion of the state court proceedings.

Back in state court, Goodwin moved for summary judgment against the County, arguing that it disregarded its own administrative procedures and selectively enforced its ordinances. The state court denied the motion, finding that the County complied with its ordinances and that Goodwin failed to establish selective enforcement. Following the ensuing bench trial, the state court determined that the County failed to prove its claimed violations by a preponderance of the evidence and entered judgment for Goodwin.

Goodwin moved to reopen the federal case in April 2015, which the district court granted after the state court resolved its pending post-trial motions. The County renewed its motion to dismiss, arguing that the state court's final judgment barred all of Goodwin's claims under the res judicata doctrine.

In April 2016, Goodwin moved to amend the complaint. The key feature of the proposed amended complaint ("PAC") was a restyled caption that renamed as defendants the same County officials previously dismissed by the district court—this time, in their individual *and* official capacity. The PAC raised the same constitutional and state law claims raised in the original complaint, plus a new state law claim for "malicious prosecution." The County objected to the consideration of the PAC, reasserting its res judicata argument and noting that the new individual-capacity claims were time-barred and did not relate back to the original complaint. Following a hearing, the district court denied Goodwin's motion to amend and granted the County's motion to dismiss all of Goodwin's claims. Goodwin timely appeals.

## II. Goodwin's Claims Against the County Officials

Goodwin contends that the district court erred twice in considering Goodwin's claims against the County officials. First, Goodwin criticizes the district court's finding that Goodwin originally sued the County officials in their official capacity only and, therefore, simply restated its claims against the County. *See, e.g.*, *Doe v. Claiborne Cty.*, 103 F.3d 495, 509 (6th Cir. 1996). Second, Goodwin argues that the district court should have granted it leave to amend its complaint to name the County officials in their individual capacity. We find Goodwin's arguments unavailing.

### *(i) Original Dismissal of the County Officials*

We review de novo the district court's dismissal of Goodwin's claims against the County officials. *Moore v. City of Harriman*, 272 F.3d 769, 771 (6th Cir. 2001) (en banc). As this court explained in *Moore*, "§ 1983 plaintiffs must clearly notify defendants of the potential for individual liability." *Id.* at 773. If "a § 1983 plaintiff *fails to affirmatively plead capacity* in the complaint, we then look to the course of proceedings to determine whether" the defendants received sufficient notice that they might be held individually liable. *Id.* (emphasis added).

Goodwin argues that the district court dismissed the County officials without properly considering *Moore*. In that case, the complaint's caption listed the defendants' names but "*did not specify* whether the officers were named in their official or individual capacities." *Id.* at 771 (emphasis added). Because the *Moore* plaintiff failed to plead capacity affirmatively, the court looked to the "course of proceedings" to determine the defendants' notice of their potential individual liability, analyzing "factors [such] as the nature of the plaintiff's claims, requests for compensatory or punitive damages, and the nature of any defenses raised in response to the complaint." *Id.* at 772 n.1.

Because Goodwin affirmatively pleaded capacity in the original complaint, we need not look to the course of proceedings to determine whether the County officials had sufficient notice of their potential for individual liability. The original complaint's caption could not be clearer— it specifically included in italics that each County official was sued "*In His Official Capacity*" or "*In Her Official Capacity*."

Even if there were any ambiguity notwithstanding the explicit "*official capacity*" statements on the original complaint's caption, Goodwin failed to press it when given the chance. In *Moore*, the plaintiff's "response to the officers' motion to dismiss clarified any remaining ambiguity" about capacity by specifying explicitly that the "individuals named are police officers who are being sued in their individual capacities." *Id.* at 774. Here, in their motion to dismiss the original complaint, the County officials argued for dismissal *because* they were sued solely in their official capacity. Goodwin's opposition to the motion to dismiss, however, voiced no objection to the County officials' capacity argument. "Subsequent filings in a case may rectify deficiencies in the initial pleadings," *id.*, but that did not happen here. The district court, therefore, properly dismissed the County officials.

### (ii) Relation Back of the PAC's Individual-Capacity Claims

Goodwin next argues that the PAC's individual-capacity claims survive an untimeliness challenge because they relate back to the original complaint. We disagree.

We review de novo a district court's conclusion that an amended complaint cannot relate back to the original complaint. *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 516 (6th Cir. 2007) (citing *Miller v. Am. Heavy Lift Shipping*, 231 F.3d 242, 247 (6th Cir. 2000)). Because the two-year statute of limitations on Goodwin's § 1983 claims had already expired when Goodwin sought leave to amend, the PAC is untimely unless it relates back to the

date of the original complaint. *See Shaw v. Pfeiffer*, 295 F. App'x 735, 735 (6th Cir. 2008). Under Federal Rule of Civil Procedure 15(c)(1)(C), a change of "party or the naming of [a] party against whom a claim is asserted" relates back to the original complaint if the claim arose out of the same conduct, transaction, or occurrence set out in the original complaint, and if, within the Rule 4(m) period for serving the summons and complaint, "the party to be brought in by amendment: (i) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." *See also, e.g.*, *Moore*, 272 F.3d at 774 (explaining that we look to Rule 15(c)(3)—now, as amended, Rule 15(c)(1)(C)—when a § 1983 plaintiff seeks to alter capacity). There is no dispute that the claims in the PAC arise out of the same conduct, transaction, or occurrence set out in the original complaint. What we must decide is whether the original complaint presented the individual defendants with information notifying them that Goodwin might pursue claims that could result in their personal liability.

Put simply, the County officials received no notice from Goodwin's original complaint of their potential individual liability. Its caption specified five times that Goodwin sought recovery from the County officials in their *official* capacity. *See Shaw*, 295 F. App'x at 735 ("The amendment did not relate back because the original complaint expressly named the defendants in their official capacities only, and therefore did not place them on notice of possible individual liability."). And although Goodwin highlights one use of the term "individual capacities" in that original complaint, that single reference buried in a page-long paragraph was, in our view, insufficient to provide notice. The only other action Goodwin took to place the individual defendants on notice was inaction: it left unanswered the official-capacity arguments raised in the County officials' motion to dismiss.

Nor did other factual circumstances offer the County officials reason to suspect potential individual liability. Rule 15(c)(1)(C)(ii) "asks what the prospective *defendant* knew or should have known during the Rule 4(m) period, not what the *plaintiff* knew or should have known at the time of filing her original complaint." *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 548 (2010). Given the original complaint's caption and Goodwin's failure to contest the County officials' argument that the claims were strictly official-capacity claims, it is unreasonable to expect that the County officials knew, or should have known, that Goodwin intended to hold them individually liable. *See id.* at 554 ("To the extent the plaintiff's postfiling conduct informs the prospective defendant's understanding of whether the plaintiff initially made a mistake concerning the proper party's identity, a court may consider the conduct." (internal quotation marks omitted)); *Lovelace v. O'Hara*, 985 F.2d 847, 850–51 (6th Cir. 1993) (holding that the amended complaint did not relate back to the original complaint because the latter "contain[ed] an unequivocal statement that" the defendant acted within his official capacity, thereby giving the defendant "no reason to believe that he was being sued in his personal capacity or that, but for a mistake concerning identity, the suit would have been against him personally"). The circumstances here foreclosed application of the relation-back doctrine.

### III. Goodwin's Claims Against Summit County

In granting the County's motion to dismiss (and denying Goodwin leave to amend), the district court explained the "multiple reasons" for dismissing each cause of action, focusing on res judicata as the primary basis for dismissing the constitutional, malicious-prosecution, and vindictive-prosecution claims. In its appeal, Goodwin addresses only the dismissal of its

constitutional claims, arguing that the district court incorrectly applied res judicata.[1]  The County

disagrees, explaining that Goodwin should have litigated those claims as part of the state court

proceedings.  We agree with the County and uphold the district court's well-reasoned analysis.

"We review de novo a district court's application of the doctrine of res judicata."  *Bragg*

*v. Flint Bd. of Educ.*, 570 F.3d 775, 776 (6th Cir. 2009) (citing *Black v. Ryder/P.I.E. Nationwide,*

*Inc.*, 15 F.3d 573, 582 (6th Cir. 1994)).  We also review de novo a district court's denial of a

motion for leave to amend a complaint if, as occurred here, "the district court bases its decision

to deny leave to amend on a legal conclusion that amendment would be futile" because it could

not survive a motion to dismiss.  *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 569 (6th Cir.

2003) (citing *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002)).  We therefore look to

the allegations in the PAC, rather than the original complaint, to determine whether the district

court properly applied res judicata.

Because the state court proceedings occurred in Ohio, Ohio law governs the preclusive

effect of the state court judgment.  *Hapgood v. City of Warren*, 127 F.3d 490, 493 (6th Cir. 1997)

(citing *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984)).  "Under Ohio law,

the doctrine of res judicata consists of the two related concepts of claim preclusion, also known

as res judicata or estoppel by judgment, and issue preclusion, also known as collateral estoppel."

*Ohio ex rel. Boggs v. City of Cleveland*, 655 F.3d 516, 519 (6th Cir. 2011) (internal quotation

marks and citations omitted).  These parties use the term "res judicata" to refer to claim

preclusion only.

---

[1] The PAC alleges state law claims for civil abuse of process, vindictive enforcement and prosecution, and malicious prosecution.  Because Goodwin does not address their dismissal by the district court, we consider those issues abandoned on appeal.  *Hih v. Lynch*, 812 F.3d 551, 556 (6th Cir. 2016) ("An appellant abandons issues not raised and argued in his initial brief on appeal.").

Before addressing the proper application of that doctrine, we consider Goodwin's argument that the district court failed to follow the Restatement (Second) of Judgments in applying res judicata. Goodwin cites language from *Grava v. Parkman Township*, 653 N.E.2d 226 (Ohio 1995), suggesting that the Ohio Supreme Court "expressly adopted" the entirety of the Restatement (Second) of Judgments in defining Ohio's res judicata principles. Goodwin then identifies § 22 in arguing that the failure to bring counterclaims in a first action (here, the state action) presents no bar to bringing its constitutional claims in federal court. But Goodwin misreads *Grava*. There, the court adopted only Restatement (Second) of Judgments §§ 24 and 25—not § 22—and neither § 24 nor § 25 help Goodwin here. *Grava*, 653 N.E.2d at 229. And, in any event, because Goodwin's claims are compulsory counterclaims, *see infra*, § 22 does not save them. Restatement (Second) of Judgments § 22 (explaining that a defendant who fails to bring a counterclaim is precluded from maintaining an action on the claim if the counterclaim was compulsory).

As the district court correctly noted, a claim is precluded under Ohio law if each of the following four elements are present:

> (1) a prior final, valid decision on the merits by a court of competent jurisdiction; (2) a second action involving the same parties, or their privies, as the first; (3) a second action raising claims that were or could have been litigated in the first action; and (4) a second action arising out of the transaction or occurrence that was the subject matter of the previous action.

*United States ex rel. Sheldon v. Kettering Health Network*, 816 F.3d 399, 415 (6th Cir. 2016) (quoting *Hapgood*, 127 F.3d at 493); *see also Grava*, 653 N.E.2d at 229 ("[A] valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action.").

This suit easily satisfies the first two elements. The County's state court action against Goodwin concluded after a bench trial on the merits, and both the federal and state court actions involve the same parties. Although Goodwin argues what it views as a material distinction—that it was a defendant in the state proceedings but a plaintiff in the federal case—this offers no refuge. *See Lisboa v. City of Cleveland Heights*, 576 F. App'x 474, 474–75 (6th Cir. 2014); *Rettig Enters., Inc. v. Koehler*, 626 N.E.2d 99, 102 (Ohio 1994) ("[Ohio Rule of Civil Procedure] 13(A) requires all existing claims between opposing parties that arise out of the same transaction or occurrence to be litigated in a single lawsuit, regardless of which party initiates the lawsuit.").

The bulk of the dispute lies in the third and fourth elements.

### (i) Claims That Could Have Been Litigated in the First Action

Turning to the third element of Ohio's claim preclusion test, Goodwin argues that, because it allegedly discovered new evidence after its answer was due in the state court action, it could not have raised the constitutional claims there. The newly discovered evidence, Goodwin admits, came to its attention by October 2014—nearly six months before the state court's entry of final judgment. Goodwin therefore could have sought leave to amend its pleadings in state court, but it failed to do so. *See* Ohio R. Civ. P. 15(A) ("The court shall freely give leave [to amend] when justice so requires.").

The fact is, Goodwin's constitutional claims stem from acts and omissions that primarily occurred *before* the state court proceedings began in October 2012. For example, the PAC alleges due process and equal protection violations because the County did not provide a "prompt, effective name-clearing hearing" *before* it initiated the state court case. In support of those claims, the PAC identifies three *Akron Beacon Journal* news articles published at least seven months before the state proceedings commenced that reported that Goodwin "engaged in

unconscionable consumer sales practices and unfair and deceptive consumer sales practices," as supposedly relayed by County employees. Likewise, the PAC alleges a takings claim based, in part, on these pre-October 2012 articles, and it also alleges a due process violation stemming from facially unconstitutional County ordinances—a claim that is not tied to any particular date.

At bottom, the PAC's allegations show that Goodwin became aware of its constitutional claims before filing the amended answer in March 2013. *See Dubuc v. Green Oak Twp.*, 312 F.3d 736, 749–50 (6th Cir. 2002) (explaining that additional supporting facts coming to light does not obviate application of res judicata). Plus, in that amended answer (and even in the separate answers Mr. Goodwin and his company filed initially), Goodwin raised as affirmative defenses many of the same allegations raised in the PAC (i.e., "selective enforcement" and "statutes [that] are, in whole or in part, unconstitutional"). Goodwin could have raised these affirmative defenses as counterclaims during the state court proceedings—but, once again, it did not. *See, e.g.*, *Rondigo, L.L.C. v. Twp. of Richmond, Mich.*, 522 F. App'x 283, 286 (6th Cir. 2013).

### *(ii) The Same Transaction or Occurrence as the First Action*

Finally, the fourth prong of Ohio's claim preclusion test is satisfied because Goodwin's constitutional claims arise out of the same transaction or occurrence as the subject matter of the state proceedings. "[S]atisfaction of this element under Ohio law does not require that both cases involve identical causes of action, proof of identical elements, or even the presentation of exactly the same evidence." *Sheldon*, 816 F.3d at 418. Rather, two sets of claims arise out of the same transaction or occurrence if they share "a common nucleus of operative facts, or if, in the language of everyday people, they are logically related." *Lisboa*, 576 F. App'x at 476 (internal quotation marks and citations omitted). Under the logical-relation test, a "compulsory

counterclaim is one which is logically related to the opposing party's claim where separate trials on each of their respective claims would involve a substantial duplication of effort and time by the parties and the courts." *Rettig Enters., Inc.*, 626 N.E.2d at 103 (quotation marks and citation omitted); *see also* Ohio R. Civ. P. 13(A) ("A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim . . . ."). Counterclaims are compulsory if they "involve many of the same factual issues, or the same factual and legal issues, or where they are offshoots of the same basic controversy between the parties." *Rettig Enters., Inc.*, 626 N.E.2d at 103 (quotation marks and citation omitted); *see also, e.g.*, *Lisboa*, 576 F. App'x at 475–76 (holding that nightclub owners' constitutional claims against the city were precluded because they could have pursued them as counterclaims in the prior state court action brought by the city to enforce its noise ordinances).

Goodwin's federal court claims are logically related to the County's state court claims; all are offshoots of the controversy prompted by the state court proceedings. Before seeking relief in state court, the County gathered and investigated permit records and consumer complaints related to Mr. Goodwin and his company. Believing then that Goodwin violated County consumer protection and building ordinances, the County initiated the state court proceedings. Goodwin's constitutional claims arise out of the County's investigation and enforcement of its ordinances. The PAC alleges that the County violated the Due Process and Equal Protection Clauses when it investigated the consumer complaints and referred the matter to the county prosecutor without providing Goodwin notice of the complaints or any opportunity to respond. The PAC further alleges that the County violated the Due Process and Equal Protection Clauses because it did not provide Goodwin with a "prompt, effective name-clearing

hearing" during the time the *Akron Beacon Journal* was publishing its articles about the County's investigation. The takings claim too emanates from the same allegations supporting the due process and equal protection claims.

Relying on *Bauman v. Bank of America, N.A.*, 808 F.3d 1097 (6th Cir. 2015), Goodwin argues it need not assert the constitutional claims in the state court action because they were not compulsory counterclaims. *Bauman* addressed whether the servicer of a loan must bring a debt-collection action as a counterclaim to a Fair Debt Collection Practices Act lawsuit, *id.* at 1099, and labeled the counterclaim not compulsory, in part for policy reasons and in part due to significant differences in the two actions' facts, *id.* at 1102. By contrast, the PAC's factual allegations are thoroughly intertwined with the core facts that were at issue in the state proceedings, and we discern no policy reasons compelling a different result.

Goodwin also seeks support from *Leatherworks Partnership v. Berk Realty*, 247 F. App'x 676, 680–81 (6th Cir. 2007), where the court declined to apply res judicata principles to the bulk of the plaintiff's claims because they were based on events that occurred *after* entry of judgment in the first action. Goodwin's constitutional claims arose well before entry of final judgment in the state court action, and Goodwin's allegedly-discovered new evidence to support its claims does not change the fact that the federal court and state court actions "involve many of the same factual issues." *Rettig Enters., Inc.*, 626 N.E.2d at 103. Goodwin's constitutional claims are barred by res judicata, warranting dismissal.

**IV. Conclusion**

For these reasons, we AFFIRM.

**KAREN NELSON MOORE, Circuit Judge, concurring in the judgment.** I would affirm simply on the grounds of Ohio principles of res judicata, and therefore I concur in the judgment.